### BROADDUS *vs.* WARD ET AL.

B. contracted, in 1825, with the proprietors of the town of Rocheport, for the purchase of a lot in that town, by which he bound himself to erect on said lot a dwelling-house of a certain description, within two years, otherwise the lot was to revert to the proprietors. B. neglected to build any house on the lot, and the court being of opinion that he had no sufficient excuse for failing to comply with his contract in this respect, refused to decree a specific performance. Equity cannot relieve against a forfeiture where the party applying for relief is in default.

### ERROR to Boone Circuit Court.

TODD, *for Plaintiff in Error*, relies upon the following points:—

1. The decree should have been for complainant.

There had been a waiver of the forfeiture upon all lots, at the sale, the complainant purchased.

2. The forfeiture could have been compensated for in damages, and the court should have directed the inquiry.

3. The purchase money should have been refunded.

4. The defendants, re-selling the property, had no right to enforce a forfeiture.

ROLLINS, *for Defendants*, relies upon the following points:—

1. Under the written agreement, the complainant, Broaddus, was bound to improve the lot purchased by him, by erecting, within two years, on the same, a log house, 18 by 20 feet, and finished so as to be tenantable, and on his failing to

do so, the lot, by the terms of the agreement, reverted to the proprietors, unless they waived the necessity of the complainant making such improvement.— Newland on Contracts, ch. 12; Sugden on Vendors, ch. 8; 2 Bibb, 78; 1 Johns. C. Rep., 369; Benedict *vs.* Lynch, 13 Vesey, 224; 3 Monroe, 318, Mason *vs.* Chambers; 4 Littell, 200, McKinley *vs.* Butler.

2. There is no evidence going to show, that the proprietors of Rocheport ever did waive the necessity of Broaddus' making the improvement stipulated for in the agreement.

3. The court below did not err in rejecting the testimony as marked in the bill of exceptions, because the same was irrelevant and improper, and because most of said testimony is the mere repetition by the witnesses of what was said to them by third persons.

4. The court below did not err in rejecting the evidence of Jesse B. Dale, as marked in the bill of exceptions, going to show that the time for making the improvement upon the lot bought by the complainant was prolonged, because there was no allegations in the bill to justify such proof.—5 Mo. Rep., 141, Moore and Porter *vs.* McCulloch.

5. That even if additional time was given by the proprietors, to complainant and others, to make the improvement stipulated for in the original agreement, still Broaddus has forfeited all right to the lot, for his continued failure to make any improvement on said lot whatever, within such time as might have been given him.

6. That the failure of complainant to improve the lot purchased by him, according to the agreement, for years after he should have improved it, justified the conclusion, on part of the defendants, that he had abandoned his claims thereto.

TOMPKINS, *Judge, delivered the opinion of the Court.*

Jeremiah Broaddus, the complainant in the Circuit Court, states in his bill, that, on the seventeenth day of November, in the year 1825, he contracted with, and became the purchaser from, John Ward, Lemon Parker, Abraham Barnes, and John Gray, of a certain lot of ground in the town of Rocheport, Boone county, known on the plat of said town as lot No. (45,) for the sum of $47 50, payable in two equal instalments, at six and twelve months after the day of said purchase; that the said John Ward, Lemon Parker, Abraham Barnes, and John Gray, were, at the time aforesaid, proprietors of the land, and laid out thereon the said town of Rocheport, and that said purchase was evidenced by a writing signed by the said proprietors, in which they agreed, that if the said purchase money should be paid, and if a house should be built on said lot within two years, of not less value than a log house 18 by 20 feet, and the same be finished so as to be tenantable, then the said defendants would convey to the plaintiff, by deed, &c., said lot, otherwise, the said agreement should be null and void, and the lot should revert to the proprietors; that, subsequently to the sale of said lot to him, the said John Gray sold all his right to the said land and premises within said town to one Joshua Newbrough, who sold the same to William Gaw by deed in fee simple, and

that also subsequently to the said sale, the said Abraham Barnes sold all his interest in said town, and the land out of which the said town was taken, to one Robert S. Barr in fee simple; and that the said purchasers, William Gaw and Robert S. Barr, had full notice of the plaintiff's claim to said lot at the time of their making the purchases aforesaid; that he had fully paid the purchase money of said lot to the said Ward, Parker, Barnes and Gray, at the time it became due; that about this time said Parker departed this life intestate, leaving a widow and two children; that the said Ward and Parker, and the said Barnes and Gray, who executed the title bond or agreement aforesaid, for the lot aforesaid, after the payment of the purchase money aforesaid, by the plaintiff, did release, acquit, and discharge the plaintiff, and all other persons who had purchased lots from them in said town of Rocheport, from any obligation to improve said lot, but that, subsequently thereto, whilst the plaintiff was in full possession of said lot, after paying for it as aforesaid, in the month of January, 1836, the then pretended owners of the said land, and the lots in said town, John Ward, William Gaw, Robert S. Barr, and the widow and heirs of said Parker, through their agent, George Knox, addressed a letter to the plaintiff, requiring him to improve the said lot during that year, and that he, the plaintiff, having his own interest in view, did undertake, and was about, to improve largely upon said lot by erecting a brick house thereon during that year, viz., 1836, but was hindered and prevented by them, the said John Ward, William Gaw, Robert S. Barr, and the widow and children of said Lemon Parker, and that they thereupon took possession of the said lot against the will of the plaintiff, and at a public sale, made by them, they set up and sold the said lot, in several parcels, to the highest bidder, and that Edward Camplin, Andrew McQuilty, Nimrod Dickerson, John McClintock, John and David W. Alexander, and William Gaw, each purchased separate parts and parcels of the same, and as this plaintiff believes, obtained from the said proprietors written evidence of said sale; that at said sale he gave notice, and fully apprized said purchasers, of his title and claim to the said lot; that, since said purchase by Andrew McQuilty, he hath sold and conveyed his interest therein to one William Davidson, who is made defendant hereto, and that said Davidson, when he made said purchase, had notice of the plaintiff's claim, and that the said John and David W. Alexander, since their purchase of a part of said lot, have sold and conveyed their title to one John M. McGee, who is prayed to be made defendant hereto, and that said McGee had notice of the plaintiff's claim.

The bill then prays that the defendants be decreed to convey to the complainant, &c.

The defendants, Barnes, Ward, Gray, Gaw, Parker, &c., admit, that the complainant purchased the lot from the original proprietors of Rocheport, John Ward, Lemon Parker, Abraham Barnes, and John Gray, about the year 1825, as in his bill of complaint is stated, and on the conditions therein mentioned; that since the purchase of said lot by the complainant, Broaddus, said John Gray sold all his interest in the land and lots within the town to one Joshua Newbrough, and that he, as they are informed, sold the same to William Gaw, aforesaid. They further state, that one of the other proprietors, as they are informed, Abraham Barnes,

sold and conveyed all his interest in said town, some time in 183–, to one Robert S. Barr, and that said Gaw and Barr admit, that they had notice of the complainant's purchase of the lot aforesaid, and that they had heard and believed that he had both forfeited and abandoned his contract, as appears by his own admissions, and the inspection of his title-bond.

They admit, that they had heard that the complainant had purchased a lot, as is in his bill of complaint stated, and also, that he had paid for it, but they require it to be proved.

They expressly deny, that said Ward, Parker, Barnes, and Gray, or either of them, did, at any time, whilst they had any claim in said town of Rocheport, release, discharge, or in any manner acquit said complainant from his obligation to improve said lot precisely according to the stipulation of said title-bond, as stated in the bill of complaint exhibited to the court. They deny, also, that the proprietors ever did consider the complainant in the legal possession of said lot, after his failure to comply with his contract. They admit, that George Knox wrote a letter to complainant, who then resided in the State of Kentucky, and, as they have understood, that he wrote said letter at the instance and request of one who was interested in said town of Rocheport, the date and contents of which communication they will not now pretend to repeat; and they contend, that they cannot be now accurately collected from the torn, mutilated, and defaced copy which the complainant has exhibited, and they deny that there is any requisition contained in said letter, on him, to improve said lot; but say, that it was distinctly therein stated to him, in said letter, that the lot, according to the title-bond, had reverted to the proprietors, and that there is no intimation, even in said letter, except the unauthorized opinion of the agent, that the then proprietors of said town of Rocheport did not intend to hold said lot. They deny any knowledge of the complainant being about to improve largely on said lot, by erecting brick houses thereon, in the year 1836, and do not believe that he ever had any such intention; and they say, that they would not have permitted him to do so without another distinct purchase from those entitled to sell. They deny having taken possession of said lot illegally, but state they paid for their respective shares a valuable consideration. They admit the sale of the lot, as stated in the bill, to Edward Camplin, Andrew McQuilty, Nimrod Dickerson, John McClintock, John and David W. Alexander, and William Gaw, and that it may be conveyed to them according to their respective shares; that they understood, that at the time of the sale of the said lot the complainant did forbid the sale. They admit, that they have understood that said McQuilty has sold his interest in said lot to William M. Davidson, but they know nothing of Davidson's knowledge of the complainant's claim thereto; that they have also understood, that John and David W. Alexander have conveyed their interest to John McGee.

They admit their refusal to convey said lot to said Broaddus, and deny all charges of combination and confederation, to cheat, &c. John McGee answered separately, that he had purchased from John and David W. Alexander their portion of said lot, but denies making the purchase with full knowledge of the complainant's claim; says, that he had heard the lot called the Broaddus lot, at

the time of sale, but denies that he had any knowledge of the complainant's claim, or pretence of claim, to said lot. Wm. M. Davidson answered separately, that he had no knowledge of the complainant's claim, and denies that he purchased from Andrew McQuilty, and states that he purchased from John R. Clark. Andrew McQuilty admits that he purchased a part of said lot, but denies any notice of the complainant's claim thereto, and says that he did not hear the complainant, at the sale, when he (McQuilty) purchased, give notice of his claim. Replications, &c., were filed, and the court, after hearing the evidence, dismissed the plaintiff's bill of complaint.

On the bill of exceptions this testimony is found:—Tyre Harris states, that some time since the year 1830, he had a conversation with Michael Woods, deceased, in which Woods told him he had received a letter from the complainant, Broaddus, desiring him to accept an agency over a certain lot belonging to him, Broaddus, situated in Rocheport, and that Broaddus wished him to make certain improvements on the lot, and to retain a lien on the property until he should be reimbursed by the complainant for the amount expended in such improvement. The witness thought the building was to be large, and probably of brick.

George Knox stated, that in 1834 he became agent for John Ward in the management of his business generally in Missouri, and that he thought it advisable, with the consent of William Gaw, to write to Broaddus concerning the lot in question, and that the letter was substantially as follows:—

"*Rocheport*, January 15th, 1835.

"I, acting as the agent of John Ward, and at the request of one of the other proprietors of Rocheport, want to know what disposition you intend making of the lot purchased at the first sale. It is in a good situation for business of any kind, and —— is important to the town that it be improved. The lot, according to the condition of the title-bond, has reverted to the proprietors, but I do not think they have a disposition —— it, —— provided it should be well improved in the course of the summer, which it would be best for you to do, or dispose of it to some one who would, or they will take it into their own hands again, as ——. You will please write to Mr. William on the subject soon.

"Respectfully,                           "George Knox."

This witness stated, also, that in the year 1835 Robert S. Barr acquired the interest of Abraham Barnes in said town of Rocheport, and that he related to Barr, as nearly as he could recollect, the letter which he had written to Broaddus, and that Barr expressed a willingness to confirm the title to Broaddus, if he should comply with the proposition made to him; that the letter mentioned is the same as the mutilated letter attached to the bill, and marked No. 2. The witness did not recollect that either Mr. Broaddus, or any agent of his, was prevented or forbidden to erect a building on the lot during the year 1835; but previous to the sale of lots in 1836, the proprietors came to the conclusion that Mr. Broaddus had forfeited all claim to the lot, and determined to have it sold.

The testimony of James Woods fixes the time at which the plaintiff, Broaddus, applied to Michael Woods, deceased, to improve the lot in question for him.

This witness stated, that the deceased, who was his father, told him that

Broaddus applied to him by letter in 1834. The witness had never seen the above-mentioned letter of Broaddus, either before or since the death of his father. He further says, that he does not know that his father ever made any agreement with Broaddus to improve the lot.

One other witness, Grubbs, stated, that the sale took place in November, 1825, and that he lived on the town site till the year 1829, and that late in the spring or early in the summer 1836, the then proprietors, Ward, Gaw, and others, refused to permit Michael Woods to improve the lot, on the condition of making a title to it.

Another witness stated, that some improvements in the town were made in 1831, but the principal improvements were made in 1832. In 1831 and '2, when business began to improve, the proprietors prolonged the time, and that, in 1836, Broaddus forbade the sale of the disputed lot.

It is nowhere attempted to be proved, that the first proprietors of the town of Rocheport did release, discharge, or acquit either Broaddus, the plaintiff, or all the other purchasers of lots from them in said town, from any obligation to improve their lots.

The plaintiff does not state, that the actual proprietors, against whom he commenced this action, did release, discharge, and acquit him from improving the lot, but that subsequent to the release, &c., of the original proprietors, whilst he was in full possession of said lot, &c., about January, 1836, the then pretended owners of lots, &c., in said town, to wit, John Ward, William Gaw, &c., by their authority, through their agent, George Knox, addressed him a letter, requiring him to improve said lot during that year; and he alleges, that having his own interest in view, he did undertake, and was about to improve largely on said lot, by erecting a brick house thereon during the said year, 1836, but that he was *hindered and prevented* by them, the said Ward, Gaw, and Barr, and the said widow and heirs of Lemon Parker.

The copy of George Knox's letter exhibited with the bill, shows as its date "January 15," without any year annexed, although it had been in the possession of Broaddus himself, and Knox, in his deposition, states, that it was written and dated on the 15th January, 1835, and denies that he was authorized by the proprietors to do so: he restores the letter exhibited as well as his memory will enable him. It was admitted and proved to be much mutilated. Knox denies that he wrote that letter by the authority of the proprietors. He says he had, in 1834, received a power of attorney from Ward to attend to his business generally in Missouri, and with other business to attend to the sale and management of his property in Rocheport, and that he thought it advisable, with the consent of Gaw, one of the proprietors, to write to Broaddus. This letter, as restored, has been set out, and there is nothing in it inconsistent with the mutilated copy exhibited. Even admitting that Knox's letter was the authorized act of the proprietors, the plaintiff has given no evidence of any act done by him in 1835 towards building or improving the lot; but in 1836 a man came to Rocheport, who called himself the agent of Broaddus, and offered to improve the lot, when the proprietors had resolved to hold the lot themselves.

We collect from the evidence of Tyre Harris, and of James Woods, son of

Michael Woods, deceased, that in the year 1834 the deceased told them that he had received from Broaddus, residing in Kentucky, a letter requesting him to build on the lot, and retain it till he paid himself by the rents and profits for his expenditures, and that Woods declined doing it.  This evidence was excepted to, and it does seem curious that any lawyer should ever offer such in any cause— nothing but hearsay to prove a particular fact—which if it had been proved by Michael Woods himself would have amounted to nothing.

But the plaintiff contends, that having performed a valuable part of the agreement, he ought to have a specific execution of the contract, and they rely on Fonblanque's Equity, p. 395.  It is there said, that if a man had performed a valuable part of the agreement, and is in no default for performing the residue, then it seems but reasonable he should have a specific execution of the contract, &c.; for, since he entered upon the performance in contemplation of the equivalent he was to have from the person with whom he contracted, there is no reason why this accidental loss should fall upon him more than upon the other.  In 1825, Broaddus is shown, on record, to have purchased this lot, and the proprietors are shown to have extended the time of making the improvement from time to time. No improvements are stated to have been made before the year 1831, but the principal were made in the year 1832, when the time, according to one of the witnesses, was still further prolonged, but for what length of time it is not ascertained.  In 1834 we find Broaddus in Kentucky, and when or why he went is not explained.  It is not pretended that his absence was procured by any act of the proprietors, or that he was prevented by any unavoidable accident from improving this lot, and consequently he cannot bring himself within the provision of the passage referred to in Fonblanque.  If ever there was a case in which equity would refuse to relieve against a forfeiture, this ought to be one.  The lot had been purchased eleven years before the second sale; and although Knox, in his testimony, denies that he wrote the letter by the authority of the proprietors, yet he leaves it to be inferred, that if Broaddus had, even in the year 1835, improved the lot according to contract, the proprietors would have made him a title.  The principal improvement had been made in 1832, seven years after the first sale, and the property had thereby been greatly increased in value, at the risk and expense of others, when this man had withdrawn himself to Kentucky, and not till 1834 is he found, by hearsay evidence, to have opened a correspondence with Michael Woods, to procure him to improve this lot at Woods' own expense, and in 1836 he forbids the sale, claiming the lot nine years after it was forfeited. In Stevenson and Wife *vs.* Blight's and Dunlap's Heirs, 7 Monroe, 142, (another of the plaintiff's references,) we find the same rule laid down as in Fonblanque— all very good law, and a state of facts to suit the law is all that is wanting.  It is stated, in 1 Maddock, 37, that relief will, under certain circumstances, be given upon a breach of covenant by a lessee, as to the mode of cultivation, &c.  And in a case where the tenant had omitted to keep the premises in repair, as he had covenanted to do, &c., relief was given.  But Lord Eldon seems not to have concurred in these decisions, or to admit that relief could be administered, unless in cases of accident and surprise, &c.; and it seems clear, that if the tenant's

conduct with reference to his covenant has been gross and ruinous, relief would not be granted him. This is another citation of the plaintiff. What can, it may properly be asked, be more grossly negligent than the conduct of the plaintiff in this case? Six years after the first sale, the proprietors still forbearing, the purchasers began to improve, and in the sixth and seven years improvements were made greatly enhancing the value of the property. All that the plaintiff, in the mean time, has done, as appears in evidence, is to write to Michael Woods in 1834, two years after the other purchasers had, by their industry, given value to the town property, to build a brick house, and to keep it till, by the rents, he had paid the expense of building, and this, too, is only known as the report of what two of the witnesses say that Woods in his lifetime told them, and two years still later he proves that he forbade the sale. No accident or surprise has been attempted to be proved; it is useless, then, to inquire whether any of the defendants were affected with notice of his claim.

The decree of the Circuit Court, dismissing the cause, is affirmed.