## THE STATE ex inf. J. M. CARNAHAN, Prosecuting Attorney, ex rel. FRANK P. WEBB et al. v. M. W. JONES et al., Appellants.

### In Banc, December 8, 1915.

1. **CONSOLIDATED SCHOOL DISTRICT: Signers of Petition: Residence.** The petition to the county superintendent for the establishment of a consolidated school district under the Act of March 14, 1913, Laws 1913, p. 721, is not required to be signed by qualified voters of every existing district to be affected. The statute requires the petition to be signed by twenty-five qualified voters of the community, and a "community" may include several districts or parts of districts, and as used in the statute means resident citizens of a locality in more or less proximity.

2. ————: **Inclusion of Parts of Districts Not Named in Petition.** The statute does not require that the petition for the establishment of a consolidated school district shall fix absolutely its boundaries. The county superintendent is given authority to include within its boundaries parts of existing districts not named in the petition.

3. ————: ————: **Infringment of Constitutional Right.** There is no infringement upon the constitutional right of an existing school district by taking from it a part of its territory and including it within the boundaries of the consolidated district proposed to be formed, without giving to the voters of the part not taken the right to vote on the question of organization of the consolidated district. The Legislature is given the power to provide methods of forming new districts, changing the boundary lines of old ones and dividing existing districts.

4. ————: **Voters.** The voters within the consolidated school district as bounded by the county superintendent are entitled to vote on the question of the organization thereof, and the statute gives no persons outside that territory the right to object because he was not consulted.

5. ————: **Certification: Addressed to County Clerk.** The statute does not require the certificate showing the proceedings of the meeting by which the organization of the consolidated school district was affected, to be addressed to the county clerk. It simply requires the proceedings of the meeting to be certified to him.

6. ————: ————: **The Word "Certify."** The word certify is not indispensable to a certificate. It means to give certain knowledge or information, or to testify with certainty in writing.

State ex inf. v. Jones.

7. ——: ——: **Sufficiency.** A written statement setting forth the place and time of the special meeting called by the county superintendent to pass on the question of the organization of a consolidated school district, that the qualified voters met as per the call, that they were called to order by said superintendent, that a certain voter was elected chairman and another secretary, that the chairman ordered a ballot taken on the proposition, that it resulted in so many votes for consolidation and so many against, and that six directors were elected, etc., and signed by the chairman and secretary and sworn to by them, contains the facts required to be certified by the statute, and is not insufficient as a matter of law.

8. ——: **Construction of Statute.** No strict or technical construction is to be put upon the statute authorizing the organization of consolidated school districts. It was designed as a workable method by plain, honest, worthy citizens not specially learned in the law.

9. ——: **Policy of Statute.** As long as the Legislature violates no constitutional restriction upon its acts, the wisdom of any act is not subject to review by the courts; nor can the courts consider the policy of an act authorizing the consolidation of school districts when applied to sparsely settled communities, or when applied to a single district already organized which contains a large part of the voting population in the community or territory affected by the proposed consolidation.

Appeal from Carter Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. B. Daniel* for appellants.

(1) It is not necessary under the Laws of 1913, p. 722, sec. 3, that the petition of qualified voters to the county superintendent should be signed by a petitioner or petitioners from each of the school districts affected by the organization of a consolidated schools district organized in response to such petition. State ex rel. v. Job, 205 Mo. 28; Instructions of State Superintendent of Schools under Sec. 10837, School Laws 1913, p. 52; Instructions of State Superintendent of Schools, School Laws, p. 93. (2) The School Laws,

being intended to be executed by plain people not learned in the law, will be liberally construed to effect the purpose for which they were enacted. State ex rel. v. Gordon, 261 Mo. 649; State ex rel. v. Job, 205 Mo. 34. (3) The petition to the county superintendent is solely for his information, and having served that purpose relators should not be heard to complain of defects therein if any there be. Laws 1913, p. 722, sec. 3; State ex rel. v. Young, 84 Mo. 94. (4) The county superintendent of schools was not and could not be restricted by the petition in the matter of the territory to be included in a proposed consolidated school district. It was his duty, not the duty of the petitioners, to determine what territory should be included. Laws 1913, p. 722, sec. 3. (5) There was filed with the clerk of the county court by the chairman and secretary of the special school meeting a sufficient certificate of the proceedings of said meeting. Webster's International Dictionary, defining "Certify" and "Certificate"; Standard Dictionary; Bouvier's Law Dictionary; Land Co. v. Morten, 183 Mo. App. 637; Bank v. Stackpole, 41 Me. 302; People v. Foster, 58 N. Y. 574; State v. Brill, 58 Minn. 152; Kipp v. Dawson, 59 Minn. 82; State v. Schwin, 65 Wis. 207; State v. Gee, 28 Ore. 100; Railroad v. People, 200 Ill. 237; McDonald v. State, 8 Mo. 283; Ziff v. Colored. Masonic Lodge, 80 Ark. 31; Anderson's Law Dictionary; Witcher v. Conklin, 84 Cal. 499.

*Stuart L. Clark* and *John H. Raney* for respondents.

(1) The "community" described in the petition for the organization of Consolidated School District No. 2, was composed of four smaller communities already organized for educational purposes and which were bodies corporate, were named in the petition, and were to compose the larger proposed "communi-

266Mo.13

ty," and the boundaries thus described marked the limits of "this community" which the petition requested the county superintendent to visit, and out of which it was sought to organize the consolidated school district. A school district is a "community" organized for educational purposes; it is composed of a society of people living in the same place (school district), under the same local laws and regulations prescribed for educational purposes, and who have, as to those laws and regulations, the same rights and privileges. Black's Law Dict., Title, Community. It is also a body politic and corporate. R. S. 1909, sec. 10837. It is, therefore, a "community" under the rule of both the common and the civil law. 8 Cyc. 397. (2) The limits of the boundaries of the community which was sought to be organized into a consolidated district were fixed by the boundaries of the districts named in the petition for consolidation. Laws 1913, p. 722, sec. 3; People ex rel. v. Darrough, 107 N. E. 844; Pieper v. County Superintendent, 153 N. W. 112; Smith v. State ex rel., 149 Pac. 884. There is no warrant in the law for adding to the districts named in the petition, the adjoining districts. Laws 1913, p. 722. And, the action of the county superintendent in adding territory not named in the petition, was without authority of law, and rendered the whole proceeding void. People ex rel. v. Darrough, 107 N. E. 844. (3) To permit the inclusion of a school district within the boundaries of a proposed consolidated school district where no qualified voters living in such district have signed the petition for such consolidation, would destroy the corporate existence of such district without the consent of a single inhabitant thereof, and would deprive them of the right of local self-government in the administration of their educational affairs, contrary to the provisions of section 3 of article 1 of the Constitution. (4) The charter of a consolidated school district consists in the certifi-

cate of the chairman and secretary of the special school meeting, of the proceedings of said meeting to both the county clerk and the county superintendent of the county in which such district is organized. This record is barren of any proof that any certificate was ever filed with the county superintendent of schools of Carter county. And the purported certificate filed with the county clerk is not a certificate certifying to anyone the proceedings of the meeting; it is addressed to no one and certified by no one. The absence of any charter conclusively shows that the purported district has no corporate existence. State ex inf. v. Cummins, 114 Mo. App. 93; School District v. Hodgin, 180 Mo. 79.

BLAIR, J.—This is an appeal from a judgment of the circuit court of Carter county in favor of informant in a proceeding in *quo warranto,* instituted by the prosecuting attorney, to oust appellants from office as directors of Consolidated School District No. 2 in that county.

By the pleadings and admissions in open court the only questions for solution by the trial court were: (1) whether, when it is proposed to establish a consolidated school district under the Act of March 14, 1913, the petition to the county superintendent must be signed by qualified voters of every district to be affected; (2) whether parts of existing districts not mentioned in the petition, though included in the notice, can be included in the consolidated district; and (3) whether the certificate or report made under section 3 of the act was, in this case, sufficient as a matter of law.

The act in question, Laws 1913, pp. 721 et seq., is set out in full in State ex rel. v. Gordon, 261 Mo. 631.

I. Respecting the qualifications of the signers of the petition whereby proceedings for the organization of consolidated districts are initiated, the **Signers of Petition.** sole provision of the Act of March 14, 1913 (Laws 1913, p. 722, sec. 3), is as follows:

"When the resident citizens of any community desire to form a consolidated district, a petition signed by at least twenty-five qualified voters of said community shall be filed with the county superintendent of public schools."

In the instant case, the petition was signed by the requisite number of qualified voters of the community, but none of them resided in District No. 22, which it was proposed in the petition to include in the consolidated district. The trial court held this was fatal to the proceedings, invalidating the organization.

With this conclusion we are unable to agree. The act does not require that every district proposed to be affected shall be represented among the signers of the petition. In fact, it does not require that every district which shall be affected shall be mentioned in the petition. The act does not deal with the matter at all upon the basis of districts already organized. It requires merely that the signers of the petition shall be qualified voters of the "community," the resident citizens of which desire to form a consolidated district. The word community in this act is not employed in any technical or strictly legal sense, but is a sort of synonym of "neighborhood" or "vicinity" (Berkson v. Railroad, 144 Mo. l. c. 220, 221) or may be said to mean the people who reside in a locality in more or less proximity. [Keech v. Joplin, 157 Cal. l. c. 11.] So defined, a community may include several districts and parts of districts. There is no requirement that the petitioners shall reside here or there in the community. That they are resident citizens of it is enough.

II. The trial court held that the organization was void because the county superintendent included within the boundaries of the proposed district parts of districts not named in the petition, though adjacent to those specified therein.

**Districts Not Named in Petition.**

The applicable provision of the statute (Laws 1913, p. 722, sec. 3) is: "On receipt of said petition, it shall be the duty of the county superintendent to visit said community and investigate the needs of the community and determine the exact boundaries of the proposed consolidated district. In determining these boundaries, he shall so locate the boundary lines as will in his judgment form the best possible consolidated district, having due regard also to the welfare of adjoining districts."

From this provision it clearly appears that it is not intended that the petition shall fix absolutely the boundaries of the proposed district. In fact, it appears that the chief function of the petition is to call the attention of the county superintendent to a community twenty-five of whose resident citizens desire to organize a consolidated district. It is the duty of the superintendent to determine (subject to limitations not affecting the question being considered) the exact boundaries of the district, the organization of which is to be submitted to the voters therein. Besides the absence of positive restrictions founded upon boundary lines of existing districts, the very fact that the superintendent is admonished to have "due regard also to the welfare of the adjoining districts" is a clear intimation that such districts are not excluded from, at least, partial inclusion in the district as he shall lay it out. Provision is also made (Sec. 5, Laws 1913, p. 723) for the annexation to other districts of remaining portions of districts, parts of which have been included in the new district.

There is no infringement of any constitutional right of a district, part of which is taken. This is true despite the fact that the voters resident in that part not included in the new district do not vote upon the question of organization. The Legislature is empowered to provide the methods of forming new districts and changing boundary lines of old ones (State ex rel. v. Andrae, 216 Mo. l. c. 630) and of dividing existing districts (R. S. 1909, sec. 10842), and there is perceived no constitutional objection to the method of consolidation provided by the Act of 1913, interpreted as above stated. Cities can constitutionally be authorized to extend their limits without a submission of the question of extension to others than citizens of the city involved (Hislop v. Joplin, 250 Mo. 588, and cases cited); and no constitutional provision is pointed out which forbids the taking of parts of several school districts into a consolidated district upon the affirmative vote of the qualified voters residing in the whole territory proposed to be organized into a consolidated district, including the parts of districts so proposed to be incorporated.

Notice according to the statutory requirements was given in this case and its sufficiency is not questioned. The voters within the territory delimited by the county superintendent in this case, after legal notice, voted to organize the district. The statute gave them that right and gives no one outside that territory the right to object because he was not consulted. It was error to hold otherwise.

People v. Darrough, 266 Ill. 506, is not in point. Under the statute involved in that case, the petition fixed the boundaries of the proposed district. Under our statute this is not the case. Neither is the decision in Smith v. State ex rel. Cole, 149 Pac. (Okla.) 884, applicable. In that case, the statute involved required that the petition be signed by one-half of the qualified voters in each of the districts proposed to

be affected.   That statute is wholly unlike ours.   The statute discussed in People v. Keigwin, 256 Ill. 264, required the consent of two-thirds of the voters of each district affected before consolidation could be had. No similar requirement is found in our statute.   The trial court erred in its ruling upon this phase of the case.

III.   The trial court held that the certificate required by section 3 of the Act of March 14, 1913, to be made out and filed with the county clerk and county superintendent was insufficient as a matter of law.

Certification.

The act requires (Laws 1913, pp. 722, 723, sec. 3) that the meeting to determine whether the consolidated district shall be organized shall be called to order by the county superintendent or some one deputized by him for that purpose; that ''the meeting shall then elect a chairman and a secretary and proceed in accordance with section 10865, Revised Statutes 1909. The proceedings of this meeting shall be certified by the chairman and secretary to the county clerk . . . and also to the county superintendent . . . of schools.''

In this case, the chairman. and secretary of the meeting made out, signed and swore to the following:

Hunter, Mo., Jan. 30, 1915.

Pursuant to call of special meeting called by Co. Supt. (W. S. Perrin), to be held in Hunter, Mo., at school house on Sat. at 2 o'clock p. m., Jan. 30, 1915, to organize a consolidated school district in this community, with boundaries as laid out in plats posted. The qualified voters met as per call. The house was called to order by Co. School Supt. who fully stated the object of the meeting. Meeting was organized by electing G. E. Grafues, Chairman, and J. M. Zion, Sec. The chair ordered ballots taken on proposition above named which resulted as follows: For consolidation thirty-five (35) and against consolidation twenty-seven (27). Moved and seconded that six directors be elected for terms as follows, two for three years, two for two years and two for one year. The result was as follows: M. W. Jones and W. S. Connelly for three years;

R. E. Bray and M. Johnson for two years; G. E. Grafues and B. A. Lawhon for one year. No further business the meeting adjourned.                                    J. M. ZION, Sect.
G. E. Grafues, Chairman.

Subscribed and sworn to before me. This the 1st day of Feb., 1915. My term as notary public will expire Sept. the 11th, 1918.                                    JOE MOON,
(Seal)                                    Notary Public.

For some reason the notary was called as a witness and testified that G. E. Grafues and J. M. Zion signed in his presence and were sworn to the above by him. The certificate was delivered to the county clerk.

Some difficulty is encountered in grasping the objection to the document set out. The court, in its judgment, simply says it is "not a sufficient compliance with the statute." Counsel suggest that it is not addressed to the county clerk "nor was it certified by the chairman and secretary, but was sworn to before a notary public, and that certificate or jurat of the notary does not show by that affidavit that either the chairman or secretary made oath that the facts stated therein were true."

It is not argued that the facts stated in the certificate are insufficient under the Act of 1913 and section 10865, Revised Statutes 1909, to show proceedings effectual to consolidate the territory affected. The statute does not require the certificate to be addressed to the county clerk or any one else. It requires that "the proceedings of this meeting shall be certified . . . to the county clerk," etc. The word "certify" is not indispensable in a certificate [Spratt v. State, 8 Mo. 247.] "To certify" is thus defined in 6 Cyc. 729: "To give certain knowledge or information of; make evident; vouch for the truth of; attest; to make a statement as to matter of fact; to testify in writing; give a certificate of; make a declaration about in writing, under hand, or hand and seal; . . . to make a

declaration in writing; . . . to testify to a thing in writing.''

The dictionaries and decided cases bear out these definitions. No strict and technical construction is to be put upon the statute involved, nor is a strict and technical compliance with it to be exacted of the "plain, honest, worthy citizens, not specially learned in the law" in the performance of their duties under it. [State ex rel. v. Job, 205 Mo. 1. c. 34.]

The certificate was given under the hand of persons designated for that purpose by the statute and, in addition, was sworn to by them. The facts certified are sufficient. It is objected that it was not proved that a copy was sent to the county superintendent. No such proof was necessary, since the pleadings admitted that fact, and the agreement on the trial expressly excluded any need of proof of it.

The cases cited by respondent upon this proposition do not militate against our conclusion upon this phase of the case, which is, that the trial court erred in holding the certificate insufficient.

IV. Respondent comments upon the policy of the Act of March 14, 1913, as applied to sparsely settled communities and to those in which a single Policy of district, already organized, contains a pro-Law. portionately large number of the voting population in the community or territory affected by a proposed consolidation. With this we have nothing to do. As long as the Legislature violates no constitutional limitation upon its powers, the wisdom of its action is not subject to review. That feature of legislation is remediable at the polls, not in the courts.

The judgment in this case is reversed and the cause remanded with directions to quash the writ and dismiss the information. All concur.