178 N.J. Super. 128 (1981)
428 A.2d 518
LUSTRELON, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
JOHANN PRUTSCHER, INDIVIDUALLY AND D/B/A JOHANN PRUTSCHER COMPANY, AND GEWERBE-UND-HANDELSBANK, A.G., DEFENDANTS, AND UNITED JERSEY BANK, DEFENDANT-RESPONDENT, AND CREDITANSTALT BANKVEREIN VIENNA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1980.
Decided February 25, 1981.
*131 Before Judges SEIDMAN, ANTELL and LANE.
Henry Harfield, of the New York bar, admitted pro hac vice, argued the cause for appellant (Morrison & Morrison, attorneys; Donald W. DeCordova of counsel).
Warren J. Kaps argued the cause for respondent Lustrelon, Inc. (Gary E. Stern on the brief).
Joseph Dunn argued the cause for respondent United Jersey Bank (Cummins, Dunn, Horowitz & Pashman, attorneys).
Defendants Johann Prutscher and Gewerbe-und-Handelsbank, A.G., did not file briefs.
The opinion of the court was delivered by SEIDMAN, P.J.A.D.
This is an appeal from an adverse summary judgment by a foreign bank which honored a letter of credit upon presentment by the beneficiary of a sight draft and document purportedly in *132 compliance with the letter and then sought reimbursement from the issuing bank in New Jersey. The summary judgment declared the letter of credit cancelled and permanently enjoined the New Jersey bank from making payment of the draft. The principle issue involved is whether, as the foreign bank contends, it is entitled to reimbursement because the document submitted conformed to the terms of the letter of credit and any alleged fraud or contractual breach with respect to the document or the underlying transaction did not affect the bank's obligation to pay.
On March 1, 1976, Peoples Trust of New Jersey, now United Jersey Bank (UJB), issued an irrevocable letter of credit in the amount of $166,000 for the account of Lustrelon, Inc. The beneficiary named therein was "Messrs. Johann Prutscher, Vienna" (Prutscher). The letter of credit was addressed to Creditanstalt Bankverein of Vienna, Austria (Credit), as the confirming bank. It was issued in connection with a contract entered into between Lustrelon and Prutscher on February 19, 1976.
Lustrelon is a New Jersey corporation engaged in the manufacture and sale of plastic products. Prutscher, whose place of business was in Vienna, was the holder of a patent on corner interlock joints for plastic furniture elements sold under the trademark of "Logo." Prutscher agreed to provide Lustrelon the molds and tools required to manufacture the elements and granted Lustrelon "the sole and exclusive right and license under Licensor's Know-how and Licensor's Patent Right" to manufacture and sell "The System" during the period of the contract. Lustrelon agreed to pay Prutscher royalties in accordance with the schedule set forth in the contract and, in addition, undertook
... to provide PRUTSCHER with a bank guarantee for the worth of the mould 166,000$ for the contract period. Guarantee should be sent prior to the shipment of the initial complete set of moulds and automatically becomes valid with the date of the shipments (text of guarantee as attached).
The guarantee, termed "irrevocable," was intended "to cover possible loss by damage [to] or physical loss of these tools" and obligated Lustrelon to pay Prutscher

*133 ... the total amount or any part thereof upon receipt of the first written request and assigned [sic] certified statement from Messrs. Johann Prutscher, Vienna, to the bank confirming failure of Lustrelon to return moulds on first written demand from Messrs. Johann Prutscher, Vienna, and without further investigation of the legal situation to Messrs. Johann Prutscher, Vienna. The relevant sum will be remitted within a period of 14 days after receipt of such request to a bank account to be named by the beneficiary hereunder.
Lustrelon complied with the requirement by having UJB issue the letter of credit referred to hereinabove, the proceeds of which would be available to Prutscher by a sight draft "accompanied by documents specified below":
Against a signed certified statement from Messrs. Johann Prutscher, Vienna, confirming failure of Lustrelon, Inc. to return molds as per contract dated February 19, 1976 on first written demand from Messrs. Johann Prutscher, Vienna.
The letter of credit was expressly made subject to the "Uniform Customs and Practice for Commercial Documentary Credits fixed by the International Chamber of Commerce (1974 Revision) Publication 290" (UCP). Credit confirmed the letter of credit and sent a written acknowledgment of its confirmation to UJB.
After receiving the tools and molds from Prutscher, and encountering difficulties in their use, Lustrelon wrote to Prutscher in August 1976 complaining of defects in the system and expressing a desire to terminate the contract and return the molds. Prutscher requested Lustrelon to return the molds via shipping agents in New York engaged for that purpose by Prutscher in early October. The molds were delivered to the agents and were ultimately received by Prutscher in Vienna on or about November 22, 1976.
On November 19, 1976 Prutscher presented to Credit a written demand for payment under the letter of credit, with instruction to remit the amount into its account in the Gewerbe-und-Handelsbank in Vienna. The demand was accompanied by Prutscher's sight draft for $166,000 and the following statement "... duly signed and confirmed by our [Prutscher's] Company":
We, Messrs. Johann PRUTSCHER, Diefenbachgasse 35, 1150 Vienna, Austria, confirm the failure of LUSTRELON, INC. to return moulds as per Contract dated 19th February 1976, on first written demand from us.
*134 Upon receipt of the draft and statement from Credit, UJB informed Credit by telex message dated November 29, 1976 that the draft "does not bear your endorsement and drawn to our order." UJB also advised Credit that Lustrelon was applying to the court in New Jersey for an injunction against payment and, since a period of 14 days was allowed for settlement, suggested that no action be taken "until we advise you of court decision." On December 1 another telex message from UJB notified Credit that Lustrelon had obtained an order restraining payment by UJB, that further proceedings were scheduled for December 21 and that a copy of the order was being forwarded. Credit responded on December 2 that it was forwarding a duly endorsed replacement draft notwithstanding the acceptance by all bankers in this country of drafts in the form originally presented. UJB was further informed that Credit's confirmation of the letter of credit "is an independent undertaking of our bank and therefore is not subject to any decisions of a court at your end," and that Credit would "have to effect payment on December 13, 1976 at the latest" and "must claim cover from you for our payment made under the irrevocable l/c confirmed by us according to your instructions."
Lustrelon cabled Credit on December 5 that the molds had been returned to Prutscher "and accordingly any statement or certificate to the contrary is false." Referring to the restraining order, Lustrelon advised Credit to "withdraw demand and draft against United Jersey Bank" since "you have no greater rights as alleged confirming bank [and] ... any payment by you is at your sole risk and responsibility."
On December 6 UJB dispatched another telex message to Credit calling its attention to its counsel's advice that "beneficiary's statement dated November 19 not in proper form since not certified in accordance with terms of credit would you revert to this matter." The next communication, on December 14, was a letter from Credit to UJB reminding it of Credit's "independent obligation towards Messrs. Johann Prutscher suable against us" and stating that since "[f]or this reason we were obliged to *135 meet the liability assumed," payment of the amount of the letter of credit was made on December 14 to Prutscher's assignee, Gewerbe-und-Handelsbank. Expressing the opinion that Prutscher's "statement" complied with the letter of credit and that "a supplement of the statement is superfluous," Credit nevertheless enclosed a duplicate "which is now certified in respect of its contents, too." Credit also disclosed that while the "legal questions concerning the L/C" were not affected by the underlying transaction and Lustrelon's claims against Prutscher, it had requested Prutscher "to explain the case to us" and was told that although "it was true that the moulds and tools had been returned" they were not sent "in accordance with the contract of February 19, 1976," i.e., "the merchandise was not shipped in the same condition as provided in the contract." UJB was again requested to reimburse Credit for the amount paid plus its commission and charges.
UJB replied on December 21. It first informed Credit that the "corrected certified statement of beneficiary referred to in our telephone conversation December 16" had not yet been received. With respect to the court proceedings, UJB informed Credit that "despite our strong opposition and declared intent and desire to pay against proper documentation when received," the court had continued the restraint preceding the outcome of the Lustrelon-Prutscher litigation, that Lustrelon had been permitted to amend its complaint to assert certain claims against Credit and that a writ of attachment had been issued and levied upon the proceeds of the letter of credit in UJB's hands.
There was, as indicated, ongoing litigation during the foregoing exchange of messages. It began with Lustrelon's filing of a verified complaint against Prutscher and UJB on December 1, 1976, seeking damages from the former for breach of contract and warranty and for conversion of plaintiff's funds if payment of the amount of the letter of credit resulted from Prutscher's forwarding to UJB a certificate falsely claiming "that the molds and tools were not returned to defendant, Prutscher." As to UJB, judgment was sought enjoining it from paying the letter *136 of credit and declaring the letter of credit null and void "by virtue of the fact that plaintiff has returned the tools and molds." A temporary restraining order was issued and the matter of a preliminary injunction was set down for hearing on December 15. UJB counter-claimed against Lustrelon for a judgment dissolving the restraint and declaring that it was obligated to pay the draft and entitled to be reimbursed by plaintiff. Thereafter, Lustrelon filed an amendment to its complaint adding as defendants Credit and Gewerbe-und-Handelsbank. It sought damages from Credit for allegedly improperly honoring the letter of credit despite knowledge of infirmities in and falseness of the document submitted. Jurisdiction was obtained over Credit through the execution of the writ of attachment on funds held by UJB to cover the letter of credit, and, on December 21, an interlocutory injunction was issued restraining UJB and Credit from, respectively, honoring the letter of credit and making demand for reimbursement. Credit filed an answer, cross-claim and counterclaim seeking, in substance, payment either from Lustrelon or UJB. The record does not disclose whether Prutscher answered the complaint, although the pretrial order lists an attorney as appearing on its behalf.
Credit, UJB and Lustrelon all moved for summary judgment. After hearing argument of counsel, the trial judge issued a letter opinion in which he observed, initially, that a default judgment had previously been entered in favor of Lustrelon and against Prutscher in an amount in excess of $200,000 as damages for Prutscher's fraud and breach of contract. He correctly observed that the issue before the court was the propriety of Credit's honoring of Prutscher's signed draft under the letter of credit. He held the letter of credit to be void, made permanent the injunction against UJB "that no funds are due from UJB to Credit," ordered the return of the "frozen funds" to Lustrelon, and entered judgment in the amount of the released funds in favor of Credit and against Prutscher. The resultant judgment, *137 to the extent Credit is aggrieved thereby, is the subject matter of this appeal.
The trial judge's letter opinion is seriously flawed. It is, in the first place, brimful of factfinding despite the existence of disputed issues which, assuming their relevancy or materiality with respect to the letter of credit and the rights and obligations of the parties thereunder, would clearly have required a plenary trial, thus precluding the entry of summary judgment at least to the extent of the issues involved in this appeal. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
The trial judge found that Prutscher committed a fraud upon and breached its contract with Lustrelon. He also found that "at Prutscher's request the forwarding agent designated by Prutscher falsely represented that the molds and tools had not been delivered in accordance with the terms of the contract," without making any inspection of the molds and tools. Apparently incensed by that which he deemed to be unconscionable conduct on the part of Prutscher, the trial judge was harshly critical of Credit for honoring Prutscher's demand for payment under the letter of credit. Characterizing the events in December 1976 as "maneuvering," the trial judge branded Credit's action as "reckless and ... an obvious attempt to avoid any logical determination of the merits of the litigation before this Court." He added:
It was done with full knowledge of the at least partially substantiated claims of plaintiff that the certification of Prutscher was false. It was not the right of Credit to interpret either the law of this State or the Austrian law in the light of the serious conflict of facts then before it. Aside from appearing reckless, there is the inference raised that such action by Credit, an Austrian bank, dealing with the Austrian defendant (the ultimate wrongdoer) constituted a type of unholy alliance which this Court will not accept as a mandated action under any civilized law.
The trial judge found further that the Prutscher "communication to UJB" was not "`certified' as required by all law, including Austrian law." He said that payment by Credit to Prutscher was not "forced" and was "immoral and collusive," and even if payment was required under Austrian law, "this Court would *138 not allow such a misuse of the law to frustrate justice in this country." The trial judge found "as a fact that Credit knew of the infirmities in the documentation presented by Prutscher to UJB [sic]." He also found that "Credit could or would have been protected at the time by an injunction since Prutscher and Credit were within the jurisdiction of this Court." The trial judge was mistaken in this regard. It is plain that Credit was not subject to the jurisdiction of the court when payment was made on December 14. The writ of attachment that was issued as process in the action was obtained on December 20, so that notice thereof, together with a copy of the complaint, necessarily could not have been served upon Credit until some time thereafter. Further, the trial judge charged, without support in the record, that
... [t]he action of Credit with the knowledge it had at the time, in attempting to force UJB to make payment even after an injunction had been sought, and in paying Prutscher or Prutscher's assignee knowing that Prutscher was committing a fraud on Lustrelon, was designed to frustrate the power of this Court and to prevent it from making a fair determination on the merits.
It is abundantly evident that the trial judge here misconceived his function in considering the motions for summary judgment. His limited role was to determine whether there were genuine issues as to material facts, but not to decide the issues if he found them to exist. Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J. at 73. This would have been particularly so in this case since, as is apparent from the trial judge's remarks, good faith on the part of the paying bank was put in question. Cf. Kraftsman Container v. United Ctys. Trust Co., 169 N.J. Super. 488, 497 (Law Div. 1979).
Beyond the foregoing, the trial judge's letter opinion is deficient in its failure to address the nature and purpose of a letter of credit and, in particular, the obligation thereunder of the issuing or, as here, the confirming bank, a clear understanding of which was critical to a proper resolution of the issues involved in this case.
*139 Letters of credit, widely used especially in international trade and commerce, are intended generally to facilitate the purchase and sale of goods by providing assurance to the seller of prompt payment upon compliance with specified conditions or presentation of stipulated documents without the seller's having to rely upon the solvency and good faith of the buyer. New Jersey Bank v. Palladino, 77 N.J. 33, 41 (1978), Intraworld Industries, Inc. v. Girard Trust Bank, 461 Pa. 343, 336 A.2d 316 (Sup.Ct. 1975). A letter of credit, however, may also serve as a guarantee of performance of obligations. Insurance Co. of North America v. Heritage Bank, 595 F.2d 171, 173 (3 Cir.1979). Such instrument is known as a "standby letter of credit." New Jersey Bank v. Palladino, supra. The laws applicable to domestic letters of credit are now contained in the Uniform Commercial Code  "Letters of Credit," enacted in this State as N.J.S.A. 12A:5-101 et seq. Since no one argues to the contrary, we may safely assume that the legal principles applicable to the letter of credit here involved should be as set forth in the Code.
N.J.S.A. 12A:5-103 defines a letter of credit as "an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this Chapter (12A:5-102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." The credit may be either revocable or irrevocable. Ibid. Other pertinent definitions are "issuer," the bank or other person issuing the credit; "customer," the one who causes an issuer to issue a letter of credit; "beneficiary," the person entitled under the terms of the credit to draw or demand payment, and "confirming bank," a bank which engages that it will itself honor a credit already issued by another bank. Ibid. In the context of this case it is important to note that a "confirming bank by confirming a credit becomes directly obligated on the credit to the extent of its confirmation as though it were its issuer and acquires the rights of an issuer." N.J.S.A. 12A:5-107(2). Another pertinent definition is found in N.J.S.A. 12A:5-103(b):

*140 A "documentary" draft or a "documentary demand for payment" is one honor of which is conditioned upon the presentation of a document or documents. "Document" means any paper including document of title, security, invoice, certificate, notice of default and the like.
There can be no doubt that the issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract between the customer and the beneficiary. N.J.S.A. 12A:5-114(2). The issuer has no responsibility to monitor that contract. It must pay, provided the proper documents are presented, regardless of whether the contract has been performed. Insurance Co. of North America v. Heritage Bank and Intraworld Industries, Inc. v. Girard Trust Bank, both supra. The issuer need only determine whether the documents presented appear on their face to be in accordance with the terms and conditions of the letter of credit. Ibid.; see, also, New Jersey Bank v. Palladino, supra, 77 N.J. at 42. In this respect both the issuer and the beneficiary are held to a standard of strict compliance and, in the absence of conformity, the beneficiary cannot force payment and the bank pays at its peril. Chase Manhattan Bank v. Equibank, 550 F.2d 882, 886 (3 Cir.1977). Nonetheless, setting aside for the moment the case where there is notification of fraud or irregularity not apparent on the face of the document presented, the issuer is under no obligation to ascertain and assumes no responsibility for the genuineness, accuracy or truthfulness of the document. N.J.S.A. 12A:5-109(2); see, also, Banco Espanol de Credito v. State Street Bank & T. Co., 385 F.2d 230, 235 (1 Cir.1967), cert. den. 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 163 (1968). A comparable provision appears in Article 9 of the UCP.
With these principles in mind we turn to a consideration of whether the document submitted here conformed to that called for by the letter of credit. We observe preliminarily that Lustrelon, not UJB or Credit, chose the words to be used, even though they were in substance the same as in the form of guarantee prepared by Prutscher. The document required for *141 presentment was a "signed certified statement" by Prutscher "confirming failure of Lustrelon Inc. to return moulds as per contract dated February 19, 1976 on first written demand." Undeniably, the document presented was a signed statement by Prutscher which, in the exact words of the letter of credit, purported to confirm "the failure of LUSTRELON INC. to return moulds as per contract dated 19th February, 1976, on first written demand from us."
But the trial judge, accepting the argument advanced by Lustrelon, held that the statement failed to comply with the letter of credit because it was not "certified." Whether a contrary view would have been expressed if Prutscher had said "we certify" or "we certify and confirm" is not indicated in the record. But, in that case, the further argument might have been made that since Lustrelon's concern was the truthfulness of the statement, which could not be assured by Prutscher's use of the words "we certify," a certification by a disinterested person was intended. Or if Prutscher had complied with what is said to be the requirement of Austrian law that the authenticity of the signature be certified by an authorized public official of that country, Lustrelon might still have argued noncompliance in that such certification would not address the factual accuracy of the statement.[1]
The UCP, to which the letter of credit was expressly made subject, is designed to obviate such problems. The customs and practices defined therein, unless in conflict with mandatory provisions of the Uniform Commercial Code, are valid and binding between the parties to the letter of credit. See *142 White and Summers, Uniform Commercial Code (1972), § 18-3 at 611. Article 33, pertinent here, deals with miscellaneous documents not otherwise defined in the UCP. It provides:
When other documents are required, such as Warehouse Receipts, Delivery Orders, Consular Invoices, Certificates of Origin, of Weight, of quality or of Analysis, etc. and when no further definition is given, banks will accept such documents as tendered.
In our view, absent a definition of "certified," the document was acceptable under the UCP and should have sufficed. In any event, it appears that when UJB informed Credit that the statement was not certified, the latter obtained from Prutscher and sent to UJB on December 14, 1976, a supplemental copy of the original statement on which is typed, over the signature of "Ing. Anton Kornfeld," "We hereby certify the above statement to be true and correct." We are satisfied that the document submitted, if not in its original form then as supplemented, complied with the letter of credit.
But the conclusion we have reached on this issue is not dispositive of the appeal. There remains for consideration Lustrelon's contention that Credit failed to exercise good faith in honoring the letter of credit and supporting documents. The argument advanced is that "[a] confirming bank does not act in good faith when, after the issuing bank advises it of fraud in the transaction and of a court restraint, it, nevertheless, honors the draft." This is an oversimplification and inaccurate statement of the applicable law.
An exception to the general rule requiring the issuer to honor a documentary draft which is conforming on its face is found in N.J.S.A. 12A:5-114(2)(b). Under the limited circumstances established by this section, the issuer has the option to honor or dishonor the draft, or the customer may enjoin the issuer from honoring it. The section provides that where the document which on its face appears to comply with the terms of the credit but "is forged or fraudulent or there is fraud in the transaction,"

*143 ... as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the document but a court of appropriate jurisdiction may enjoin such honor. [Emphasis supplied]
The Uniform Commercial Code imposes a general obligation of good faith in the performance or enforcement of every contract or duty within the statute. N.J.S.A. 12A:1-203. Unless additional requirements are prescribed by specific provision, "good faith" is defined in the Code as "honesty in fact in the conduct or transaction concerned." N.J.S.A. 12A:1-201(19); U.C.C. Comment, par. 19. There are no other requirements referable to N.J.S.A. 12A:5-114(2)(b). We have found no reported case in this jurisdiction, and none has been brought to our attention, interpreting "good faith" in the context of the issuer of a letter of credit. However, in cases involving holders in due course of negotiable instruments, it has been said, with pertinency here, that "good faith" as used in the Code "is determined by looking to the mind of the particular holder." Breslin v. New Jersey Investors, Inc., 70 N.J. 466 (1976); General Investment Corp. v. Angelini, 58 N.J. 396 (1971).
... The study comment [New Jersey Study Comment 1B to N.J.S.A. 12A:3-302 at 134] points out that under the predecessor Uniform Negotiable Instruments Law various tests of good faith evolved, most courts, including New Jersey's, having adopted the so-called "white heart" criterion.
"Under this test, good faith is determined by looking to the mind of the particular holder who is claiming to be a holder in due course, not what the state of mind of a prudent man should have been. [Breslin v. New Jersey Investors, Inc., supra 70 N.J. at 471]
The test, according to General Investment Corp. v. Angelini, supra,
... is neither freedom from negligence in entering into the transaction nor awareness of circumstances calculated to arouse suspicions either as to whether the instrument is subject to some defense not appearing on its face or whether the promise to pay is not as unconditional as it appears therein ... Ordinarily where the note appears to be negotiable in form and regular on its face, the holder is under no duty to inquire as to possible defenses, such as failure of consideration, unless the circumstances of which he has knowledge rise to the level that the failure to inquire reveals a deliberate desire on his part to evade knowledge because of a belief or fear that investigation would disclose a defense arising from the transaction.... [58 N.J. at 403-404]
*144 What constitutes "good faith" is somewhat elusive where an issuer of a letter of credit chooses to honor a draft upon presentment despite notification by the customer of alleged fraud, forgery or other defect not apparent on the face of the supporting document. In such case, the issuer has actual notice of the claimed infirmity. Yet the Code, without further guidance, extends to the issuer acting in good faith the option of honoring the demand for payment. N.J.S.A. 12A:5-114(2)(b). The explanatory comment does not cast much light on the issue:
... [S]ince these matters frequently involve situations in which the determination of the fact of the non-conformance may be difficult or time-consuming, the issuer if he acts in good faith is given the privilege of honoring the draft as against its customer, that is to say, with a right of reimbursement against him. The issuer may, however, refuse honor. [U.C.C. Comment, par. 2 at 584]
But it is evident that since the subjective element of "good faith" is "honesty in fact in the conduct or transaction concerned," its antithesis, "bad faith," must be "a thing done when it is in fact done dishonestly." New Amsterdam, etc., Co. v. National Newark, etc., Co., 117 N.J. Eq. 264, 277 (Ch. 1934), aff'd 119 N.J. Eq. 540 (E. & A. 1936). It "`contemplates a state of mind affirmatively operating with a furtive design or some motive of interest or ill will.'" Ibid. The term "`bad faith' requires a showing of some indicia of dishonest conduct or a showing of facts and circumstances `... so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction.'" Edwards v. Northwestern Bank, 39 N.C. App. 261, 265-266, 250 S.E.2d 651, 655-656 (Ct. App. 1979). See also, Factors & Note Buyers, Inc. v. Green Lane, Inc., 102 N.J. Super. 43, 49-50 (Law Div. 1968).
Whether, in light of the foregoing, Credit in fact acted in good faith in honoring the documents submitted by Prutscher need not be decided by us on this appeal, nor should the trial judge have done so on the motions for summary judgment. The test of good faith is a subjective standard to be determined by the facts in each case. Convalescent Home of *145 First Church of Deliverance, 49 Ill. App.3d 213, 221, 8 Ill.Dec. 823, 829, 365 N.E.2d 1285, 1291 (Ct.App. 1977). Unless only one inference from the evidence is possible, the question is for the trier of the fact. Community Bank v. Ell, 278 Or. 417, 564 P.2d 685 (Sup.Ct. 1977). We have no hesitancy in concluding that a plenary trial is required here on the issue of Credit's good faith in honoring the draft. To that end, the matter must be remanded to the trial court for consistent further proceedings.
In light of the remand, we deem it useful to comment briefly on several of the trial judge's statements in his letter opinion. Credit was accused of making payment "with full knowledge of the at least partially substantiated claim of plaintiff that the certification of Prutscher was false." The trial judge said that "it was not the law of this State or of Austrian law in the light of the serious conflict of facts then before it." He expressed the view that Credit should have awaited a judicial determination on the merits. If the trial judge's concept was that Credit was bound to withhold payment upon notification of the alleged falseness of the certificate, he was mistaken. As long as the documents otherwise conformed to the requirements of the credit, the bank plainly had the option under N.J.S.A. 12A:5-114(2)(b) to honor the demand for payment, the exercise of which was governed only by the standard of good faith. Credit was not obligated to resolve the dispute between the parties. This would be so especially where, as appears to be the situation here, a question arose whether Prutscher's statement meant that the molds had not been returned, which would ostensibly have been false, or that the molds had not been returned "in the same condition as provided in the contract," which undoubtedly would have provoked a factual dispute with respect to the meaning of the guarantee. An issuing bank would be "place[d] in an intolerable position if the law compelled it to serve at its peril as an arbitrator of contract disputes between customer and beneficiary." Intraworld Industries, Inc. v. Girard Trust Bank, supra, 461 Pa. at 358, 336 A.2d at 327. Whether Credit took part in an "unholy *146 alliance," or acted "recklessly" or with design "to frustrate the power of this Court and to prevent it from making a fair determination on the merits," or "with knowledge of fraud ... [took] actions to frustrate morality and justice" would be relevant, if at all, only upon the issue of good faith and must await a plenary trial. We express no opinion on the merits of the issue.
So much of the judgment as declares the letter of credit "terminated, cancelled and of no further effect," permanently enjoins UJB from honoring any draft presented against the letter of credit, declares that no funds are due from UJB to Credit, or in any way relates to the rights and obligations under the letter of credit of plaintiff, UJB and Credit, including the right to reimbursement, is reversed. The matter is remanded to the trial court for further proceedings consistent with the foregoing. In the circumstances here present, we would expect such proceedings to be held before a judge other than the one hitherto involved. Jurisdiction is not retained.
NOTES
[1] "To certify" or "certified" is not susceptible of precise definition. Black's Law Dictionary (5 ed. 1979), defines "to certify" as "[t]o authenticate or vouch for a thing in writing. To attest as being true or as represented." It is to be noted that one of the definitions of "certify" in Webster's Third New International Dictionary (1966) is "confirm." And it has been held that the word "certify" is not indispensable in a certificate. State v. Jones, 266 Mo. 191, 181 S.W. 50 (Sup.Ct. 1915).