**STATE of Iowa, Appellee,**

**v.**

**Ronald Dean BONER, Appellant.**

**No. 54304.**

Supreme Court of Iowa.

April 9, 1971.

Porter, Heithoff, Pratt & Reilly, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Max A. Gors, Asst. Atty. Gen., George J. Knoke, County Atty., Lyle A. Rodenburg, Asst. County Atty., Council Bluffs, for appellee.

REES, Justice.

Defendant was charged by grand jury indictment with the crime of manslaughter.

He was tried to a jury and convicted and sentenced, and now brings this appeal asserting the trial court erred in overruling a motion to suppress evidence of a blood test and overruling objections to the admissibility of the evidence of the test at trial. He also complains of the giving of two instructions. We reverse and remand.

On August 7, 1969 defendant had been a member of a wedding party in Council Bluffs and following the ceremony had attended a reception for the bride and groom at a local club. He admittedly consumed one mixed drink containing whiskey and six cans or bottles of beer. Later in the evening he was involved in an automobile accident in Council Bluffs in which two girls, occupants of the car defendant was operating, were killed and in which same accident defendant sustained serious injuries. The defendant was taken to a hospital and a physician was called by the arresting officers to take a sample of blood from the defendant. The physician was not in attendance upon the defendant to administer first aid or other professional services. No request in writing from the arresting officers or anyone else in authority was made to the physician to withdraw the blood sample. Prior to withdrawing the sample, the physician attempted to communicate with the defendant, identified himself, told the defendant that he was there for the purpose of withdrawing a sample of blood and requested permission to withdraw the same. Defendant made no reply to the request and the physician testified upon the trial that in his opinion defendant was not unconscious but that the physician did not believe he was capable of responding or consenting to or refusing to submit to withdrawal of blood. The blood was then withdrawn from the defendant by the physician by the use of a disposable plastic syringe and a fresh needle, the blood was placed in a specimen bottle and the syringe and needle were disposed of. Only one specimen was withdrawn. The specimen was then examined by a pharmacologist, who

found it to contain nineteen-hundredths of one percent, or 190 milligrams percent of alcohol.

I. Section 321B.4, Code, 1966, provides, "Only a licensed physician, or a medical technologist or registered nurse designated by a licensed physician as his representative, acting at the *written request* of a peace officer may withdraw such body substances for the purpose of determining the alcoholic content of the person's blood." (Italics supplied). The failure of the peace officer to direct a written request to the physician to withdraw the blood specimen from defendant is urged as a grounds for reversal as rendering evidence of the blood test inadmissible.

Section 321B.5, Code 1966 provides, "Any person who is dead, unconscious or who is otherwise in a condition rendering him incapable of consent or refusal shall be deemed not to have withdrawn the consent provided by section 321B.3, and the test may be given; provided that a licensed physician shall certify in advance of such test that such person is dead, unconscious or otherwise in a condition rendering him incapable of consent or refusal. In such case such condition shall obviate the requirements of arrest and advice pursuant to Section 321B.6."

The above excerpted portions of the statute are incorporated in the so-called "implied consent law" of our statute. Defendant contends that a failure of literal compliance with the foregoing statutes renders the evidence of the chemical test inadmissible and that the motion to suppress the evidence of the test should have been sustained and that objections to it made during the course of the trial should likewise have been sustained. We are disposed to agree. That the defendant at the time the blood sample was withdrawn from him was incapable of either refusing or consenting seems to be established without question. That no certificate of the physician who

withdrew the blood specimen in advance of the test was provided seems to us to be also satisfactorily shown. No request in writing to the physician to administer the test by the arresting officer or any other peace officer in authority was made.

We are not unmindful of the pronouncements of this court in State v. Charlson, 261 Iowa 497, 154 N.W.2d 829, cited by the State, in which this court held substantial compliance with the procedural provisions of our implied consent law is sufficient. However we note the test involved in the Charlson case was taken at the request of the defendant and with his consent. The request of a defendant or his consent to the taking of a specimen of his blood or other bodily substance, would reasonably obviate the necessity for literal compliance with the provisions of the implied consent law above set out.

The defendant further complains the fact only one sample of the defendant's blood was withdrawn, destroyed one of the rights of the defendant guaranteed him by Section 321B.4, Code, which provides *inter alia,* "Such person may have an independent chemical test or tests administered in addition to any administered at the direction of a peace officer. The failure or inability of the person to obtain an independent chemical test or tests shall not preclude the admission in evidence of the results of the test or tests taken at the direction of the peace officer. Upon the request of the person who is tested, the results of the test or tests taken at the direction of the peace officer shall be made available to him." The pharmacologist who analyzed the blood sample testified that there is a possibility of error in making the test and that he destroyed the blood sample in this case, and that it would be impossible to make another test. The defendant in effect contends that since by the action in disposing of the sample, a comparison test is not possible and that he therefore has been deprived of any effective means of cross-examination of the very thing which is the basis of the testimony relative to the chemical test of his blood, and accordingly contends that the testimony should have been suppressed and denied admission.

The defendant does not contend that the sample was disposed of with any intent to suppress the evidence or to deprive him of an opportunity to make a comparison analysis. If the sample had been in existence and a demand was made and the demand then refused, there would appear to be merit to the defendant's position, although we are not disposed to express opinion on this question at this time. A provision of the statute last above set out which afforded the defendant the right to have an independent chemical test or tests administered in addition to that test administered by the physician albeit as we have herein concluded the test was administered without compliance with the statutes afforded the defendant adequate protection in this area. See City of Columbus v. Glascock, 117 Ohio App. 63, 189 N.E.2d 889, 891.

■ The State contends the certificate required by section 321B.5, Code 1966 does not require the certificate of the doctor to be in writing prior to the withdrawal of bodily substances from any person who is dead, unconscious or otherwise in a condition rendering him incapable of consent or refusal to the test. With this position on the part of the State, we cannot agree. The word "certify" has a generally accepted meaning; it means to testify in writing; to make known or establish as a fact. Black's Law Dictionary, Revised 4th Ed., p. 287; Smith v. Smith, Ind. App., 110 N.E. 1013, 1014. Or, it means to vouch for a thing in writing. State ex inf. Carnahan ex rel. Webb v. Jones, 266 Mo. 191, 181 S.W. 50, 52; Sawyer v. Lorenzen & Weise, 149 Iowa 87, 92, 127 N.W. 1091, 1093. The term "to certify * * * means to testify to a thing in writing; and in the absence of statutory provision declaring the particular form of certification any form which affirms the fact *in writing* is suf-

ficient." (italics supplied). State ex rel. Scotten v. Brill, 58 Minn. 152, 59 N.W. 989, 990; Kipp v. Dawson, 59 Minn. 82, 60 N.W. 845, 846; State v. Schwin, 65 Wisc. 207, 26 N.W. 568, 570. And see State ex rel. Beckstedt v. Eyrich, 120 Ohio App. 338, 195 N.E.2d 371, 376, where the court said, "The court has searched through most standard legal works dealing with the terms 'certify', 'certified' and 'certification', and at no point in the law is there any indication that such an act can take place without being endorsed in one way or another upon a document or other paper-writing."

Based upon the failure of the peace officer to comply with the provisions of section 321B.4 and of the physician to comply with section 321B.5, Code, 1966, we feel evidence of the test should have been suppressed and the motion to accomplish the suppression of the same in advance of trial should have been sustained, and we accordingly reverse the trial court.

II. In Division II of his brief and argument, defendant alleges the court erred in the giving of Instruction No. 8 on the effect of blood alcohol tests, and in instructing the jury, "If you find from the evidence before you beyond a reasonable doubt that at the time and place in question the alcoholic content of the defendant's blood was not less than ten-one-hundredths of one percentum by weight, then you would be warranted in concluding that he was under the influence of alcoholic beverage which would prevent his safe operation of a motor vehicle; unless you find from a consideration of all of the evidence that he was not under the influence of an alcoholic beverage, or that his consumption of an alcoholic beverage does not prevent his safe operation of his vehicle."

Particular complaint of the instruction is to the effect that the use of the phrase "would be warranted in concluding that he was under the influence of alcoholic bev-

erage" was improper and that the court should have instructed the jury it would be permitted to presume the fact of defendant's intoxication or that the evidence before it could be interpreted by the jury as raising a presumption of his intoxication. The defendant insists that the word "warranty" is different in meaning from the word "presumed", and that in view of the fact that the words "presumptive evidence" is set forth in the statute, which is set out *infra,* such wording should have been employed in the instruction.

Sub-section 5 of Chapter 205 of the Acts of the Sixty-third General Assembly, which was amendatory to Section 321.281 of the Code, 1966, provides, "For the purposes of this section, evidence that there was, at the time, more than ten hundredths of one percentum by weight of alcohol in his blood shall be admitted as presumptive evidence that the defendant was under the influence of an alcoholic beverage." Section 321.281 is the section which proscribes the operation while intoxicated or drugged of a motor vehicle upon the public highway.

We are unable to perceive merit in the defendant's exceptions to Instruction #8. The instruction was well balanced, informed the jury that if it found from the evidence beyond a reasonable doubt that the alcoholic content of defendant's blood was not less then ten-one-hundredths of one percentum of alcohol by weight, that then the jury would be warranted in concluding that the defendant was under the influence of an alcoholic beverage, which would prevent his safe operation of a motor vehicle, and the jury was then instructed that unless it so found from a consideration of the evidence, that he was not so under the influence of an alcoholic beverage or that his consumption of an alcoholic beverage did not prevent his safe operation of his motor vehicle they would not be warranted in so concluding. We have paraphrased the instruction, but this is its obvious thrust.

A presumption is a substitute for evidence, but is not itself evidence, being rather an aid to legal reasoning applied to particular subjects. Van Ausdall v. Van Ausdall, 48 R.I. 106, 135 A. 850, 851. "What are commonly known as 'presumptions of fact' are really not presumptions at all, but inferences." Stenberg v. Buckley, 245 Iowa 622, 626–627, 61 N.W.2d 452, 454. "* * * a 'presumption of fact', in the loose sense, is merely an improper term for the rational potency, or probative value, of the evidentiary fact * * *." State v. Jiles, 258 Iowa 1324, 142 N.W.2d 451, 457. The principal objection of the defendant to the instruction is to the employment of the word "warrant". The use of this word did not, in our judgment, serve to mislead the jury. The court had available to it the choice of several terms such as "permitted", "justified", "warranted", etc., and elected to use the phraseology employed. In State v. Rish, 104 S.C. 250, 88 S.E. 531, 534, the court said, "While the word 'justified' is most commonly used in that connection by judges and text-writers, yet we find 'warranted' frequently used by them in the same sense and the lexicographers define them as practically synonymous." The use of the word "warranted" did not in any sense prejudice the defendant here.

■ Instruction #8 as submitted served to correctly inform the jury on the effect of a chemical test for blood alcohol.

III. In Division III of his brief and argument, defendant asserts that Instruction #6 submitted by the trial court to the jury was erroneous for that in the first sub-part of the instruction, the court informed the jury "in order for you to convict the defendant of the crime of manslaughter as charged in the indictment, the plaintiff must prove by the evidence before you beyond a reasonable doubt * * * first: that the defendant in the operation of his motor vehicle at the time and place in question was negligent *or* acting unlawfully in one or more of the ways charged in the indictment." (italics supplied)

■ The State contends that objections or exceptions to Instruction #6 were not properly preserved for review, and we incline to agree. No exception was taken to Instruction #6 by the defendant, and although defendant submitted certain requested instructions to the court, he failed to object to the court's refusal to submit the same. The asserted error therefore was not preserved for consideration by us on this appeal, as is required by Rule 196, Rules of Civil Procedure. State v. Gilmore (Iowa, 1970), 181 N.W.2d 145; State v. Schmidt, 259 Iowa 972, 979–980, 145 N.W.2d 631, 635–636; State v. Carstens (Iowa), 182 N.W.2d 119, 121.

In view of our reversal here and the remand which will doubtless result in a retrial, we feel impelled to comment on the substance of the third division of defendant's brief and argument.

■ In Instruction #6 the jury was informed that before convicting the defendant it must find from the evidence beyond a reasonable doubt that the defendant at the time and place in question *was negligent or* acting unlawfully in one or more of the ways charged in the indictment. We feel the use of the disjunctive "or" in this part of the instruction, following the word "negligent" is improper, as a finding of mere negligence, as the term is commonly used would not permit the jury to convict. Negligence is generally understood to be a want or lack of due care under the existent circumstances, and what might be considered actionable negligence in the law of torts, unaccompanied by a wanton and reckless disregard or indifference to the safety of others will not constitute the basis for a conviction of the crime of manslaughter. State v. McLaughlin, 250 Iowa 435, 440–441, 94 N.W.2d 303, 306; State v. Kellison, 233 Iowa 1274, 1276, 11 N.W.2d 371, 372–373; 7 Am.Jur.2d,

Automobiles, § 283, p. 831; State v. Richardson, 216 Iowa 809, 812, 249 N.W. 211, 212; State v. Graff, 228 Iowa 159, 175, 290 N.W. 97, 104; State v. Thomlinson, 209 Iowa 555, 557, 228 N.W. 80, 81; 61A C.J.S. Motor Vehicles § 659(1), p. 471.

The State urges Instruction #6, when read in its entirety, covers everything defendant complains of, and we concede the remainder of the instruction apparently embraces a correct statement of the law. We are however disposed to the view the use of the word "negligent", standing alone and unamplified or unqualified and followed by a disjunctive or coordinating conjunctive "or", could reasonably have misled or misdirected the jury in a very significant essential of the case, and we would reverse on this point.

The case is therefore reversed and remanded.

Reversed and remanded.

All Justices concur.