STATE of Iowa, Appellee,

v.

Jack I. WALLIN, Appellant.

No. 54202.

Supreme Court of Iowa.

Feb. 25, 1972.

Mauer & Jones, Ames, for appellant.

Richard C. Turner, Atty Gen., and Robert D. Jacobson, Asst. Atty. Gen., for appellee.

LeGRAND, Justice.

Defendant was involved in a fatal accident on October 4, 1969, when he drove his car into the rear of a truck on Interstate 80 near the city of Des Moines. The driver of the truck, David Clark Mally, died instantly as a result of the collision.

Subsequently defendant was charged with manslaughter. Upon trial to a jury, he was found guilty and was sentenced to a term of not more than eight years at the Men's Reformatory at Anamosa under section 690.10, The Code. He appeals from this judgment.

In his assignment of errors, defendant raises three issues upon which he relies for reversal. They are:

(1) Error in submitting certain instructions to the jury;

(2) Refusal to suppress evidence of blood test; and

(3) Error in admitting medical testimony of Dr. Luka, County Medical Examiner.

I. We consider, first, the admission of evidence concerning the amount of alcohol in defendant's blood immediately after the accident since we reverse and remand for a new trial on this assignment.

The trial court's ruling on this matter involves, once again, an interpretation of chapter 321B, The Code, commonly referred to as the Implied Consent Law, which was first enacted by the Sixtieth General Assembly in 1963. Since then this statute has been before us on a number of occasions.

The Implied Consent Law assumes a motorist using our public highways has consented to a test of his blood (or to other chemical tests not applicable here) upon his arrest for operating a motor vehicle while under the influence of an intoxicating beverage. Section 321B.3.

The law was enacted to help reduce the appalling number of highway deaths resulting in part at least from intoxicated drivers. State v. Charlson, 261 Iowa 497, 502, 154 N.W.2d 829, 832 (1967); Krueger v. Fulton, 169 N.W.2d 875, 878 (Iowa 1969). Its constitutionality was established early by State v. Johnson, 257 Iowa 1052, 1062, 135 N.W.2d 518, 525 (1965), and, it is no longer seriously challenged on constitutional grounds. Recently uncertainty over the application of the law to criminal prosecutions as well as administrative proceedings to suspend driving privileges was settled by State v. Hraha, Iowa, 193 N.W.2d 484 filed January 13, 1972, where we said the provisions of the statute were to be observed in both.

Briefly summarized The Implied Consent Law provides that when a person has been placed under arrest for operating a motor vehicle while under the influence of an intoxicating beverage, a blood or other chemical test to determine the alcoholic content of his blood may be demanded by written request of a peace officer having

reasonable grounds to believe the person guilty of that offense. Consent may be refused, in which event no test may be required and the suspension provisions of section 321B.7 become operative.

If, however, consent is given, as it was here, the statute prescribes the test shall be given within (1) two hours after arrest; by (2) a licensed physician, or a medical technologist or registered nurse designated by a licensed physician as his representatives, acting at the written request of a peace officer; and by the use of (3) "only new, originally factory wrapped, disposable syringes and needles, kept under strictly sanitary and sterile conditions." Section 321B.4.

These protective standards were adopted by the legislature both to protect the health of the person submitting to a test and to guarantee its accuracy for use in later judicial proceedings. State v. Charlson, 261 Iowa 497, 508, 154 N.W.2d 829, 835 (1967).

Complaint is made here that these statutory standards were not followed in two important respects. First, defendant's blood was taken without a peace officer having first requested the doctor in writing to do so, and (2) the syringe and needle used were not new originally factory wrapped and disposable as required by the statute.

The State does not claim otherwise, but argues such departures from the statute are unimportant; that there was "substantial compliance" with the Implied Consent Law; and that we have already decided this question in State v. Charlson, supra.

The questions to be answered have been considered under varying circumstances not only in State v. Charlson, supra, but also in State v. Boner, 186 N.W.2d 161 (Iowa 1971).

The State relies heavily on the Charlson case. There, as here, the syringe and needle did not meet statutory requirements and there, as here, no written request was made by the officer to the person who took defendant's blood for testing purposes.

However, the decisive distinction between the two lies in the fact that in Charlson the defendant not only consented to a test but *requested* one be made. The Charlson opinion repeatedly relies on that request as justification for the conclusion reached. We think it was the determining factor in our holding that failure to observe the statute in the two particulars mentioned did not render the results inadmissible at defendant's trial.

Then in 1971, we decided State v. Boner, supra, where we reversed a conviction for manslaughter because the results of a blood test taken in violation of the statutory conditions were admitted to show defendant's intoxication. That case involved a defendant who was unable to give consent because of his injuries and it was therefore controlled by section 321B.5. We held failure of a peace officer to make written request to the doctor to withdraw a blood sample (section 321B.4) and the additional failure of the doctor to certify that defendant was incapable of consenting or refusing to a test (section 321B.5) were fatal to the admission of the test findings.

We mention parenthetically that between Charlson and Boner, the 8th Circuit Court of Appeals decided Jacobsen v. International Transport, Inc., 391 F.2d 49 (1968), which considered the withdrawal of blood from a cadaver. We believe the holding there is in conflict with our later Boner case, which, of course is controlling for us. The present case does not fit the pattern of either Charlson, where defendant requested a test, or Boner, where defendant was unable to give consent or refusal. We must now decide the extent to which we will permit departure from the statute when consent to a test is obtained under its specific terms.

We believe Charlson should be limited to its particular circumstances—a request that a blood test be taken. We decline to extend it beyond the conditions which there existed.

What we said in State v. Shelton, 176 N.W.2d 159, 161 (Iowa 1970), is applicable here:

"The foundation requirements [concerning designation of a person to withdraw blood and the type of syringe and needle used in doing so] should not be difficult to establish. It would not serve the cause of justice for us to make extended inferences to correct a faulty foundation and thereby dilute the statutory protection afforded defendant."

In Shelton we reversed because evidence was improperly admitted concerning the blood test in the absence of a foundation showing compliance with the procedural requirements of the Implied Consent Act. While that case is factually different from this, we reiterate the statement that "it would not serve the cause of justice" for us to dilute the defendant's statutory protection by lightly excusing non-compliance with the law.

The Boner case properly distinguishes Charlson on the ground that the test in Charlson was made at the defendant's request. It was not taken because of consent given under chapter 321B.

■ While it is true Boner states a request *or* consent to a blood test obviates strict compliance with the Implied Consent Law, this did not refer to a consent given under chapter 321B. Consent may be given independent of this chapter; and the requirements of the Implied Consent Law may be waived. This is what we held in State v. Hraha, Iowa, 193 N.W.2d 484, filed January 13, 1972. It is also implicit in our conclusion in State v. Charlson, supra. Language in State v. Johnson, 257 Iowa at 1062, 135 N.W.2d at 525, also recognizes consent may be given apart from the Implied Consent Law.

■ However, such consent or waiver must be clearly proven by the party relying on it to have been made voluntarily, freely and intelligently with a full realization and comprehension of its meaning. State v. Hraha, supra.

■ Judged by this standard, what did defendant consent to here? The facts are undisputed. The officer requested defendant's consent to take a blood test under chapter 321B. He explained the consequences of refusal. The defendant acceded to this request by signing the consent form presented to him. This *was* consent under the Implied Consent Law and nothing more.

The interpretation for which the State contends would render chapter 321B totally inoperative. *No* test may be taken under that chapter without consent; but if that consent, once given, by some strange metamorphism becomes an unlimited agreement to a test under *different* conditions, then indeed the Implied Consent Law is successfully circumvented. Today we are asked to approve disregard of the statute in the two particulars already mentioned. Next perhaps we will be asked to say the prior arrest required by section 321B.4 is immaterial; or that a test three hours after arrest is as good as one within the two-hour period fixed by that same section.

Under the record now before us defendant's consent to a blood test in response to the written request of a peace officer as provided in section 321B.4 was consent that a test could be taken in compliance with the Implied Consent Law and not otherwise.

We hold it was reversible error to admit the blood test evidence obtained without a written request from a peace officer directing the doctor to withdraw a blood sample and by the use of syringe and needles not meeting statutory specifications.

For the reasons stated herein defendant is granted a new trial.

II. Several of defendant's assignments of error deal with the instructions submitted by the court. The principal objection is that these instructions told the jury de-

fendant was charged with having violated certain laws of the road. Defendant claims such violations, even if proven, would establish only defendant's negligence and could not form the basis for a manslaughter conviction. He relies strongly on State v. Kellison, 233 Iowa 1274, 11 N. W.2d 371 (1943) and State v. Graff, 228 Iowa 159, 290 N.W. 97 (1940). While defendant correctly states the rule, it has no application here.

We recently considered a similar question in State v. Boner, supra, where we said:

"Negligence is generally understood to be a want or lack of due care under the existent circumstances, and what might be considered actionable negligence in the law of torts, *unaccompanied by a wanton and reckless disregard or indifference to the safety of others will not constitute the basis for a conviction of the crime of manslaughter.*" (Emphasis added.) (186 N.W.2d at page 166).

■ In the case now before us the trial court correctly instructed the jury concerning the indispensable element of wantonness and reckless disregard for the safety of others. After setting out various rules of the road which the jury could have found defendant had violated, the court in a separate instruction told the jury:

"The operation of a motor vehicle in violation of any one or more of the rules of the road set forth in certain of the preceding instructions is not in and of itself sufficient to constitute the crime of manslaughter, even though a person is killed as a result thereof.

"If, however, it is shown that the defendant violated one or more of the rules of the road as set forth in these instructions, and in so doing operated his motor vehicle in such a manner as to show wantonness and recklessness, and that such manner of driving was of such a wanton and reckless character as to show under the circumstances utter disregard and indifference on his part for the safety of others, then such conduct will be sufficient to justify your finding him guilty of the crime of manslaughter in the event his conduct was a proximate cause of the death of David Clark Mally."

In another instruction setting out the propositions which the State was obliged to prove beyond a reasonable doubt, the trial court again pointed out that defendant could be found guilty only if he acted "in such a manner as to show wanton, reckless and utter disregard and indifference to the safety of others."

■ It is well established that instructions must be read together and are not to be considered piecemeal. State v. Morelock, 164 N.W.2d 819, 822 (Iowa 1969) and citations. When this is done, the instructions correctly, properly, and completely advised the jury of the applicable law.

III. Defendant also insists several specifications of negligence were submitted without substantial support in the evidence. We have examined the record and the transcript of evidence and find this assignment is without merit.

IV. The remaining assignment of error deals with the testimony of Dr. Luka, the Polk County Medical Examiner. Based on the blood test results, he expressed the opinion defendant was under the influence of an alcoholic beverage at the time of the accident. Defendant objects to this testimony on the ground no foundation was established upon which the doctor could base this opinion. He did not challenge the doctor's qualifications to withdraw blood and run the chemical test to determine its alcoholic content. He argues only that there was no showing the witness was qualified to express an opinion as to the effect of alcohol on the human body.

Dr. Luka has been an osteopathic physician for 26 years. He has been county medical examiner for 14. He holds degrees of Doctor of Osteopathy and Doctor

of Osteopathic Surgery. He is a member of the American College of Pathologists. Part of his official duties requires him to take and analyze blood samples. He has done "several hundred" of these.

It is quite true the State spent far more time in showing Dr. Luka's qualifications to analyze blood for alcoholic content than in his ability to relate those findings to their effect on the human body. One does not necessarily include the other.

■ However, along with most other courts, we have held a doctor may testify on a variety of medical subjects without being a specialist in each. Dr. Luka's general familiarity with blood alcohol tests is obvious from his testimony. He stated he had an opinion as to what effect the alcohol in defendant's blood at the time of the accident would have on him. This opinion, he said, was based on his background as a licensed osteopathic physician. That background includes not only his extensive experience as a practicing doctor but also his educational preparation for admission to practice his profession. See Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 713, 714, 107 N.W.2d 85, 89 (1961). This was enough to permit Dr. Luka to express an opinion on the matter at issue here.

The objections raised by defendant go to the weight of Dr. Luka's testimony rather than to its admissibility. We hold the trial court did not abuse its discretion in permitting the evidence to go in. State v. Haner, 231 Iowa 348, 349, 350, 1 N.W.2d 91, 92 (1941); Shover v. Iowa Lutheran Hospital, supra, 252 Iowa at 712, 713, 107 N.W.2d at 89; In re Estate of Springer, 252 Iowa 1220, 1230, 110 N.W.2d 380, 387 (1961); State ex rel. Schmidt v. Backus, 259 Iowa 1144, 1146, 147 N.W.2d 9, 10, 11 (1966); 31 Am.Jur.2d, Expert and Opinion Evidence, section 103, page 624; section 105, page 629; section 106, page 631.

For the reasons set out in Division I the case is reversed and remanded for a new trial.

Reversed and remanded.

All Justices concur, except REYNOLDSON, J., who concurs specially.

REYNOLDSON, Justice (concurring specially).

I cannot agree with division IV of majority's opinion and would therefore also reverse on that issue.

No foundation question was asked Dr. Luka to show any qualification to express an opinion relating to the *effect* of the measured alcoholic content in defendant's blood. We cannot judicially notice that Dr. Luka may be well qualified in this esoteric area of forensic medicine.