STATE of Iowa, Appellee,

v.

Marlan DeBERG, Appellant.

No. 63249.

Supreme Court of Iowa.

Feb. 20, 1980.

Randy L. Waagmeester of Fisher, De-Waay & Albers, Rock Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Jeanine Freeman, Asst. Atty. Gen., and David W. Casjens, Lyon County Atty., for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McGIVERIN and LARSON, JJ.

REES, Justice.

This is an appeal by defendant Marlan DeBerg from his conviction of the crime of operating a motor vehicle while under the influence of an alcoholic beverage in viola-

tion of section 321.281, The Code 1977. De-Berg contends the trial court erred in admitting into evidence the results of a blood test and other testimony. We agree, reverse the judgment of the trial court and remand for a new trial.

DeBerg was the driver of an automobile which was involved in a single car accident at approximately 1:55 A.M. on June 2, 1977. A deputy sheriff arrived at the scene at 4:20 A.M. and shortly thereafter the defendant and a passenger in the vehicle were taken to a hospital in Rock Rapids. The third occupant of the car died from injuries suffered in the crash. A blood specimen was taken from DeBerg at about 5:30 that morning pursuant to chapter 321B, The Code 1977.

DeBerg was indicted by a grand jury on November 28, 1977, and trial commenced exactly one year thereafter. The State introduced into evidence certification by the attending physician, as required by section 321B.5, that the defendant was unconscious at the time the blood sample was taken. The physician testified that the defendant was not fully unconscious at that time, but described his state as "semi-consciousness". DeBerg responded to repeated questioning regarding his name and indicated the presence of pain when the doctor moved his extremities. The physician testified he found the defendant "incapable of giving consent to the blood test." The certification was admitted over defendant's objection that it did not accurately describe his condition at the time the specimen was withdrawn.

Before trial the defendant sought to suppress the test results because it had been administered over three and one-half hours after the accident while section 321B.3 requires that blood tests be taken within two hours of arrest. The record does not disclose that DeBerg was arrested on the evening of the accident. The motion was overruled, as was defendant's objection on the same ground at trial. Defendant also objected to the evidentiary foundation of the blood test due to the fact that it had not been established that the needles, syringes and other instruments used were new, factory wrapped and disposable as required by section 321B.4. Additionally, DeBerg contended the State had not shown that the vial which contained the blood was sterile. These objections were also overruled.

At trial the court admitted evidence of the car being driven at approximately 80 miles per hour near the time of the accident, the swerving path of the car before it left the road and the distance the car traveled after leaving the road.

DeBerg was found guilty by the jury on November 30, 1978, and sentenced on January 22, 1979, after which he filed a timely notice of appeal to this court.

The following issues are presented for review:

(1) Should the physician's certification, mandated by section 321B.5, that defendant was unconscious at the time the blood test was administered not have been admitted into evidence when the physician testified that the defendant was "semi-conscious" but not capable of giving consent to a blood test at that time?

(2) When section 321B.4 requires that "only new, originally factory wrapped, disposable syringes and needles" may be used for drawing blood, did the trial court err in admitting the test results into evidence when the record indicates that only the sterility of the instruments was shown?

(3) When section 321B.3 requires that a blood test be given within two hours of arrest, should the results of defendant's blood test have been excluded from evidence when three and one-half hours had passed between the time of the accident and the taking of the blood specimen?

(4) Did the trial court err in admitting testimony concerning the speed at which defendant was driving at the time of the accident, the path the car took in leaving the roadway and the fact that a passenger was killed in the accident?

As we find resolution of the second of the aforementioned issues to be dispositive of the question of the admissibility of the blood test results, we will address it first,

resolution of the first and third issues thus being unnecessary.

I. DeBerg contends the State's foundational showing preliminary to the admission of the blood test results was inadequate, and that the trial court erred in admitting the test results into evidence. We agree.

The trial court concluded that testimony establishing the sterility of the instruments used in drawing blood was sufficient foundation to admit the test results. DeBerg, citing section 321B.4, contends that more must be shown. Section 321B.4 provides: "Only new, originally factory wrapped, disposable syringes and needles, kept under strictly sanitary and sterile conditions shall be used for drawing blood." The record does not disclose whether the syringes and needles used were "new" or "originally factory wrapped", or the manner in which they were stored.

It is clear the State has the burden of showing compliance with the foundational requirements of chapter 321B. *State v. Maxwell*, 222 N.W.2d 432, 434 (Iowa 1974); *Lessenhop v. Norton*, 261 Iowa 44, 52–53, 153 N.W.2d 107, 112 (1967). The State concedes that the following facts were not established in the record: (1) the syringes and needles used were new, originally factory wrapped and disposable; (2) the instruments were kept under strictly sanitary and sterile conditions before the withdrawal of defendant's blood; and (3) the vial in which the defendant's blood was stored was free from contamination as required by *State v. Binkley*, 201 N.W.2d 917, 919 (Iowa 1972), but would have us infer that these conditions were met from the fact that the specimen was taken at a hospital. This we have been unwilling to do in the past—a position which we do not now choose to abandon.

We require "literal compliance" with the standards set forth in chapter 321B. *State v. Boner*, 186 N.W.2d 161, 163 (Iowa 1971). In applying such standard, we have reversed convictions where the syringes and needles used have not complied with statutory requirements. *State v. Wallin*, 195 N.W.2d 95, 98 (Iowa 1972); *State v. Shelton*, 176 N.W.2d 159, 161 (Iowa 1970). In *State v. Shelton*, 176 N.W.2d at 161, we stated: "The foundation requirements [regarding designation of a person to take the specimen and the type of syringe and needle used] should not be difficult to establish. It would not serve the cause of justice for us to make extended inferences to correct a faulty foundation and thereby dilute the statutory protection afforded defendant." We find this quotation particularly appropriate to the case at bar. The State had an opportunity to show a "literal compliance" with the terms of chapter 321B, and did not do so. It did not carry its burden of proof as required by the plain mandate of the statute and followed in our case law. *Wallin; Shelton*.

The State urges us to find a sort of substantial compliance with the requirements of section 321B.4, reminiscent of this court's holding in *State v. Charlson*, 261 Iowa 497, 154 N.W.2d 829 (1967), where we held a showing that the instruments used were sterile to be an adequate foundation. Following the establishment of our literal compliance standard the *Charlson* holding was limited to its facts, to those situations where the blood test is requested by the person in custody or under suspicion. *Wallin*, 195 N.W.2d at 97. Where, as here, the specimen is taken pursuant to our implied consent statute from one who has not consented to the test, the State must show literal compliance with the statute in accordance with the specifications set forth by the legislature in section 321B.4. *State v. Droste*, 232 N.W.2d 483, 487 (Iowa 1975). The legislature has chosen to require that only new, factory wrapped disposable needles and syringes be used, and that they be kept in a sterile place until used, conditions which are not difficult to understand or to meet. As no such showing was made here, we are constrained to hold that the trial court erred in admitting into evidence the results of DeBerg's blood test, and must therefore reverse defendant's conviction.

II. As they may arise at retrial, we will address the remaining evidentiary issues.

raised by the defendant. DeBerg objects to the admission into evidence of testimony regarding the speed at which he was driving and a diagram showing the path of his car as it left the road, contending that any relevance such testimony might have is outweighed by its prejudicial effect.

 The admission of evidence lies within the sound discretion of the trial court and we will not find an abuse of discretion unless the action of the court is clearly unreasonable under the attendant circumstances, *State v. Gartin*, 271 N.W.2d 902, 910–11 (Iowa 1978). We have generally found evidence relating to a defendant's manner of driving relevant and admissible in OMVUI prosecutions. *State v. Pardock*, 215 N.W.2d 344, 346 (Iowa 1974); *State v. Sissel*, 183 N.W.2d 215 (Iowa 1971). We hold the evidence of speed of the automobile and the diagram were relevant, and that the admission thereof was not so prejudicial as to amount to an abuse of discretion.

 DeBerg also claims error in inferential references made by the prosecutor to the death of one of the passengers in DeBerg's car. This consisted of testimony by one witness that the decedent *had been* her brother, and testimony that only two of the vehicle's three occupants were seen in the hospital emergency room. No objections were posed to such questions and the answers were not attacked. Matters not raised in the trial court cannot be raised for the first time on appeal. *State v. Jump*, 269 N.W.2d 417, 430 (Iowa 1978). As error was not preserved as to these matters, we will not address appellant's contention they were inadmissible.

In summation, we hold the trial court erred in admitting into evidence the results of defendant's blood test administered under our implied consent statute due to the failure of the State to establish a literal compliance with the foundational requirements of section 321B.4. We also hold the trial court did not err in admitting into evidence testimony regarding the manner in which defendant had been operating his vehicle on the night in question. As we find reversible error in the admission of the blood test results, we reverse defendant's conviction and remand this case for a new trial.

REVERSED AND REMANDED.