STATE of Iowa, Plaintiff-Appellant,

v.

James John RANSOM, Defendant-Appellee.

No. 65396.

Court of Appeals of Iowa.

May 26, 1981.

Thomas J. Miller, Atty. Gen., and Thomas N. Martin, Asst. Atty. Gen., for plaintiff-appellant.

Chris Odell, Appellate Defender Office, Des Moines, for defendant-appellee.

Submitted to OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

JOHNSON, Judge.

Plaintiff, State of Iowa, brings this interlocutory appeal for review of trial court's order suppressing evidence of certain blood test results in a prosecution for involuntary manslaughter arising out of defendant, James John Ransom's, operation of a motor vehicle while under the influence of alcohol. The State asserts that the requirements of chapter 321B, The Code 1979, which constituted the basis of trial court's order, do not apply when a defendant is not arrested or charged with OMVUI. We reverse and remand to trial court.

On November 21, 1979, an automobile driven by defendant collided with a bicycle, killing the cyclist. Defendant was asked to accompany an officer to a patrol vehicle where, after a short time, he was advised of his *Miranda* rights and asked if he would submit to a "routine" blood test. Defendant consented to the blood test and was transported to the hospital where a blood sample was taken. Defendant had not been placed under arrest for OMVUI or any other public offense. Although the hospital personnel attempted to comply with the procedures under chapter 321B, the officers insisted that the sample was to be taken without compliance because it was a medical rather than a legal specimen. The officers made no written request from defendant and gave no explanation of the consequences of refusal.

On December 26, 1979, defendant was charged by county attorney's information with involuntary manslaughter in violation of section 707.5(1), The Code 1979. On February 14, 1980, defendant filed a motion to suppress the blood test results, alleging that the blood sample was not taken voluntarily. After a hearing trial court found defendant's consent was voluntary and overruled the motion. On June 2, 1980, defendant filed a second motion to suppress and a motion in limine, alleging that chapter 321B was applicable to this case and that the procedures had not been followed. This issue was submitted to trial court on the transcript of the first suppression hearing. Trial court sustained defendant's motions, ruling that chapter 321B was applicable, that the procedures had not been followed, and that defendant had not voluntarily, freely and knowingly waived his right to have the statutory procedures followed. The supreme court granted the State's application for discretionary review on August 22, 1980.

**I. Scope of Review.** Our review in this matter is limited to correction of errors at law only. Iowa R.App.P. 4.

**II. Applicability of Chapter 321B.** The State asserts that the provisions of chapter 321B, The Code, do not apply where the defendant motor vehicle operator is not arrested and consents, after oral request, to the taking of a blood sample. Defendant, on the other hand, alleges that the statutory provisions apply when a peace officer requests the operator to submit to a blood test, unless the statutory requirements are knowingly, intelligently and voluntarily waived. There is no dispute that the statutory provisions of chapter 321B were not followed in this case.

We first note that the requirements of chapter 321B have no application outside 321B circumstances. *Henkel v. Heri,* 274 N.W.2d 317, 320–322 (Iowa 1979). The Iowa Supreme Court has established an alternative foundational showing for those *civil and criminal* actions *outside* the scope of that chapter. (emphasis added). *Id.* at 322. Although the supreme court has found that civil actions wherein the intoxication of a motor vehicle driver is at issue are outside the scope of 321B, *Henkel,* 274 N.W.2d at 320, there are no reported cases definitively establishing what criminal actions are similarly outside the scope of 321B. *But see e. g., State v. Davis,* 269 N.W.2d 434, 441 (Iowa 1978), and *State v. Petersen,* 219 N.W.2d 665 (Iowa 1974) (motor vehicles not involved). We do not believe the supreme court's agreement with defendant's assertion in *Henkel* ("that the foundational requirements of chapter 321B should not be applied beyond the prosecution of individuals for operating a motor vehicle in an intoxicated state" *Henkel,* 274 N.W.2d at 319) provides a sufficient basis with which to base our decision in this case because that case involved prosecution of a civil action for wrongful death. Nor do we believe *State v. Boner,* 186 N.W.2d 161 (Iowa 1971), controls here because that case, although involving a trial for involuntary manslaughter, fell within the exception of section 321B.5. We conclude, however, that the facts of this case place it outside the scope of 321B.

■ The purpose of chapter 321B is "to aid the enforcement of laws prohibiting operation of a motor vehicle under the influence of an alcoholic beverage." § 321B.1, The Code 1981; *see also State v. Hitchens,* 294 N.W.2d 686, 687 (Iowa 1980). To effect this purpose, "the statute establishes the basic principle that a driver impliedly agrees to submit to a test in return for the privilege of using the public highways . . . ," *id.* citing *State v. Jensen,* 216 N.W.2d 369, 373 (Iowa 1974), and "provides authority to take blood tests when a person is suspected of driving while intoxicated . . . .'" *Henkel,* 274 N.W.2d at 320, quoting *Lessenhop v. Norton,* 261 Iowa 44, 52, 153 N.W.2d 107, 112 (1967). "Briefly summarized The Implied Consent Law provides that when a person has been *placed under arrest* for operating a motor vehicle while under the influence of an intoxicating beverage, a blood or other chemical test . . . may be demanded by written request of a peace officer having reasonable grounds to believe the person guilty of that offense." (emphasis added). *State v. Wallin,* 195 N.W.2d 95, 96–97 (Iowa 1972). The court further stated in *State v. Young,* 232 N.W.2d 535, 537 (Iowa 1975), that "[i]t is apparent chapter 321B procedures relate almost exclusively to the *post-arrest* withdrawal and testing of body specimens. . . ." (emphasis added). Thus, except for those situations enumerated in section 321B.5 wherein the arrest requirement is obviated,[1] we conclude that a peace officer must place a defendant under arrest for OMVUI before the procedures of chapter 321B are mandatory.

■ As a result of this conclusion, we must address defendant's assertion that he was functionally under arrest because he was in the custody of the police and had been given his *Miranda* rights. We do not agree. Although section 804.5 defines arrest as "the taking of a person into custody when and in the manner authorized by law, including restraint of the person or his or

---

1. *See e. g. State v. DeBerg,* 288 N.W.2d 348, 349 (Iowa 1980); *State v. Stewart,* 223 N.W.2d 250, 251 (Iowa 1974); *State v. Boner,* 186 N.W.2d 161, 163 (Iowa 1971).

her submission to custody . . .[,]" we conclude mere submission to authority is not sufficient to constitute an arrest. Section 804.14 provides:

> Manner of making arrest. The person making the arrest must inform the person to be arrested of the intention to arrest him or her, the reason for arrest, and that he or she is a peace officer, if such be the case, and require him or her to submit to the person's custody, except when the person to be arrested is actually engaged in the commission of or attempt to commit an offense, or escapes, so that there is no time or opportunity to do so;
>
> . . . .

While defendant's circumstances may warrant the conclusion that constitutional protections for custodial interrogations were applicable, we are not prepared to say the facts here show that the defendant was placed under arrest as required by section 321B.3.

Having determined that defendant was not placed under arrest, we must decide whether defendant gave valid consent under standard constitutional analysis. In its initial ruling, trial court found that defendant had voluntarily consented to the withdrawal of a blood sample, but expressly reserved the question of whether chapter 321B applied. In its second ruling, however, trial court suppressed the evidence on the grounds that defendant did not validly waive his statutory rights under chapter 321B. We believe the second ruling was erroneous and that the proper question is whether defendant validly gave consent to have a blood sample withdrawn outside the scope of 321B. *See Wallin*, 195 N.W.2d at 99 (only consent given was that the test be given in compliance with chapter 321B).

To be valid, consent must be voluntarily, freely, and intelligently given. *Id.* This requires an examination of the totality of the circumstances to determine whether the statements were the product of an essentially free and unconstrained choice made by the defendant at a time when his will was not overborne nor his capacity for self-determination critically impaired. *State v. Snethen*, 245 N.W.2d 308, 315 (Iowa 1976). In applying this test to the factual background, we conclude, as did trial court in its initial ruling, that the defendant's consent was voluntarily and intelligently given. At the hearing, the officer testified that defendant was told he did not have to consent but defendant stated he would give a blood test immediately if the officers desired him to do so. Defendant knew he was not under arrest. Defendant testified he was never threatened that his license would be taken if he refused to give the test. He also understood the test was routine because a fatality was involved.

In summary, we conclude that chapter 321B is not applicable to this case, that defendant's consent was valid, and that evidence of the results of the blood test is admissible if the proper foundation is laid as set forth in *Henkel*, 274 N.W.2d at 320. For these reasons we, therefore, reverse trial court's ruling and remand this case for further proceedings.

REVERSED AND REMANDED.