# In the Iowa Supreme Court

No. 23–1448

Submitted September 11, 2024—Filed November 15, 2024

**State of Iowa,**

Appellant,

vs.

**Jeffrey John Flynn,**

Appellee.

Appeal from the Iowa District Court for Dubuque County, Robert J. Richter, Judge.

On discretionary review from an order granting a criminal defendant's motion to suppress evidence obtained in violation of Iowa Code chapter 321J. **Affirmed and Case Remanded.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General, and Louis S. Sloven (argued), Assistant Attorney General, for appellant.

Alyssa M. Carlson (argued) and Christopher C. Fry of O'Conner & Thomas, P.C., Dubuque, for appellee.

**McDonald, Justice.**

Iowa has an implied consent statute governing law enforcement's ability to request and collect bodily specimens in investigating suspected offenses for operating a motor vehicle while intoxicated (OWI). The Iowa Code provides that "[a] person who operates a motor vehicle in this state . . . is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of a controlled substance or other drugs." Iowa Code § 321J.6(1) (2022). The Code further provides that "[t]he withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer" and that "[a] person who has been requested to submit to a chemical test shall be advised" of the consequences associated with refusing or submitting to the chemical test. *Id.* §§ 321J.6(1), .8(1). The question presented in this OWI case is whether a peace officer can bypass these statutory provisions and request a motorist provide a bodily specimen for a chemical breath test without a written request and without advising the motorist of the consequences associated with refusing or submitting to the request for a chemical breath test.

I.

Dubuque County Deputy Sheriff Rob Freund initiated a traffic stop of a vehicle traveling sixty-eight miles per hour in a fifty-five miles per hour zone. The motorist was Jeffrey Flynn. After speaking with Flynn, Freund developed reasonable suspicion Flynn was intoxicated. Freund smelled the odor of an alcoholic beverage. Flynn admitted he had drank three beers earlier that evening. Freund requested that Flynn participate in field sobriety tests. Flynn consented; he performed poorly. Freund requested Flynn submit to a preliminary breath

test. Flynn consented; the preliminary breath test showed Flynn had a blood alcohol concentration above the legal limit.

Freund arrested Flynn at the scene for operating a motor vehicle while intoxicated. Freund requested Dubuque County Deputy Sheriff Tyler Schmitt, who had arrived at the scene during the traffic stop, transport Flynn to the law enforcement center. Schmitt agreed to do so. Schmitt provided Flynn with Miranda warnings during transport from the scene of the traffic stop to the law enforcement center but did not provide Flynn with any other advisories. After Schmitt delivered Flynn to the law enforcement center, Freund continued his investigation. Freund requested Flynn submit to a chemical breath test, and Flynn consented to the request. Freund did not make the request in writing and did not advise Flynn of the consequences associated with refusing or submitting to the chemical breath test. The chemical breath test showed Flynn had a blood alcohol concentration of .110.

Flynn was charged with OWI first offense, in violation of Iowa Code section 321J.2. Flynn moved to suppress evidence of the chemical breath test. At the suppression hearing, Freund explained why he did not provide Flynn with a written request for chemical testing and did not provide Flynn with any advisories. In Freund's view, he did not need to comply with the statute because he had not invoked the statute. He testified this was the Dubuque County Sheriff's Department's unwritten policy with respect to investigating OWI cases. Specifically, he explained that peace officers were to request suspected motorists submit to chemical testing without making a written request and without giving advisories. If the suspected motorists refused to submit to the request for chemical testing, then peace officers were to obtain a search warrant for chemical testing.

The district court granted Flynn's motion to suppress evidence. The district court reasoned that the "legislature used the word ***shall***" in the relevant statutes. The district court was "not inclined to engage in some sort of strained mental gymnastics to interpret the word in a different way." In the district court's view, "[i]t would be odd for the legislature to spell out a very detailed scheme for obtaining consent if there was no requirement that officers follow it." The district court concluded that "[w]hen reasonable grounds exist, a request for consent to a chemical test must comply with the requirements of [sections] 321J.6 and 321J.8." To hold otherwise would effectively eviscerate the statute, the district court reasoned.

We granted the State's application for discretionary review of the district court's suppression order.

## II.

This case presents "a question of statutory interpretation, and our review is for the correction of errors at law." *Doe v. State*, 943 N.W.2d 608, 609 (Iowa 2020). We review the district court's ruling on the "motion to suppress to determine whether the court correctly interpreted and applied chapter 321J." *State v. Demaray*, 704 N.W.2d 60, 62 (Iowa 2005). Our interpretive inquiry begins with the language of the statute at issue. *Doe*, 943 N.W.2d at 610. "Using traditional interpretive tools, we seek to determine the ordinary and fair meaning of the statutory language at issue." *Id.*; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012) (defining "fair reading method" as "determining the application of a governing text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued"). "In determining the ordinary and fair meaning of the statutory language at issue, we take into consideration

the language's relationship to other provisions of the same statute and other provisions of related statutes." *Doe*, 943 N.W.2d at 610; *see also* Iowa Code § 4.1(38) ("Words and phrases shall be construed according to the context and the approved usage of the language . . . ."). If the "text of a statute is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute or resort to rules of construction." *Voss v. State* (*In re Est. of Voss*), 553 N.W.2d 878, 880 (Iowa 1996).

We conclude the statute is unambiguous and requires a peace officer who requests a motorist to provide a bodily specimen for chemical testing to do so in accord with the statutory procedures when certain conditions exist. The statute provides, as relevant here, that:

> 1. A person who has been requested to submit to a chemical test **shall** be advised by a peace officer of the following:
>
> *a.* If the person refuses to submit to the test, the person's driver's license or nonresident operating privilege will be revoked by the department as required by and for the applicable period specified under section 321J.9.
>
> *b.* If the person submits to the test and the results indicate the presence of a controlled substance or other drug, or an alcohol concentration equal to or in excess of the level prohibited by section 321J.2 or 321J.2A, the person's driver's license or nonresident operating privilege will be revoked by the department as required by and for the applicable period specified under section 321J.12.

Iowa Code § 321J.8(1)(*a*)–(*b*) (emphasis added). The statute further provides that "[t]he withdrawal of the body substances and the test or tests **shall** be administered at the written request of a peace officer . . . ." *Id.* § 321J.6(1) (emphasis added). "[W]henever" the word "shall" is "used in a statute," it "imposes a duty" and precludes the exercise of discretion. *Id.* § 4.1(30)(*a*); *see also State v. Klawonn*, 609 N.W.2d 515, 522 (Iowa 2000) (en banc) ("The uniform

rule seems to be that the word 'shall,' when addressed to public officials, is mandatory and excludes the idea of discretion." (quoting *Hansen v. Henderson*, 56 N.W.2d 59, 67 (Iowa 1952))).

The officer's statutory duty to make a written request and provide advisories prior to making a withdrawal of bodily substances applies, however, only when certain "conditions exist." Iowa Code § 321J.6(1). The Code specifies those conditions:

> *a.* A peace officer has lawfully placed the person under arrest for violation of section 321J.2.
>
> *b.* The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.
>
> *c.* The person has refused to take a preliminary breath screening test provided by this chapter.
>
> *d.* The preliminary breath screening test was administered and it indicated an alcohol concentration equal to or in excess of the level prohibited by section 321J.2.
>
> *e.* The preliminary breath screening test was administered to a person operating a commercial motor vehicle as defined in section 321.1 and it indicated an alcohol concentration of 0.04 or more.
>
> *f.* The preliminary breath screening test was administered and it indicated an alcohol concentration less than the level prohibited by section 321J.2, and the peace officer has reasonable grounds to believe that the person was under the influence of a controlled substance, a drug other than alcohol, or a combination of alcohol and another drug.
>
> *g.* The preliminary breath screening test was administered and it indicated an alcohol concentration of .02 or more but less than .08 and the person is under the age of twenty-one.

*Id.* Two of those conditions are satisfied here: Flynn was under arrest for a suspected violation of section 321J.2, *id.* § 321J.6(1)(*a*), and the preliminary breath test "indicated an alcohol concentration equal to or in excess of the level prohibited by section 321J.2," *id.* § 321J.6(1)(*d*). Thus, under the plain language

of the statute, the deputy had a nondiscretionary duty to make a written request and provide the required advisories. *See id.* §§ 321J.6, .8.

The State argues the statute does not require a written request or advisories when the specified conditions exist. Instead, the State argues the statute applies only when the statute is "invoked." *See Demaray,* 704 N.W.2d at 64 ("[T]he statutory implied consent procedure must be followed, but only when the implied consent procedures are invoked."). In the State's view, Freund did not "invoke" chapter 321J and thus compliance with chapter 321J was not required. It is true that this court and the court of appeals have stated that chapter 321J "is not the exclusive means by which law enforcement may obtain chemical testing" and that the statute must first be invoked before it applies. *State v. Laub,* 2 N.W.3d 821, 828–29 (Iowa 2024) (quoting *State v. Frescoln,* 911 N.W.2d 450, 454 (Iowa Ct. App. 2017)); *see also Demaray,* 704 N.W.2d at 64. This conclusion follows from the statute, which provides that chapter 321J "does not limit the introduction of any competent evidence bearing on the question of whether a person was under the influence of an alcoholic beverage." Iowa Code § 321J.18. In accord with the statute, we have thus concluded that chapter 321J did not preclude the administration of chemical testing when the defendant requested the test. *See State v. Charlson,* 154 N.W.2d 829, 834–35 (Iowa 1967); *see also State v. Wallin,* 195 N.W.2d 95, 97 (Iowa 1972) ("*Charlson* should be limited to its particular circumstances—a [defendant's] request that a blood test be taken."). We have held that chapter 321J did not preclude a peace officer from obtaining a search warrant to perform a chemical test of a blood sample already given. *See State v. Oakley,* 469 N.W.2d 681, 682–83 (Iowa 1991). We have concluded that chapter 321J did not preclude a peace officer from requesting a suspect provide authorization for the release of medical records that contained

the results of a chemical blood test already taken by the hospital treating the suspect following an accident. *See Demaray*, 704 N.W.2d at 64. More recently, in *State v. Laub*, we concluded that chapter 321J did not preclude a peace officer from obtaining a search warrant directing the suspect to provide a specimen for chemical testing in lieu of requesting consent to chemical testing. 2 N.W.3d at 832 ("We conclude the district court erred in holding that chapter 321J is the exclusive means of investigating a suspected OWI and precludes a peace officer from obtaining and executing a search warrant for the collection of bodily specimens.").

But none of these cases addressed the fact pattern presented here: a peace officer requesting from a motorist a bodily specimen where the statutory conditions existed. Under these circumstances, a peace officer's request that a motorist submit to a chemical breath test is, in fact, an invocation of chapter 321J that requires a written request and the provision of advisories. *See* Iowa Code §§ 321J.6, .8. Not only is this conclusion dictated by the statute, this conclusion has the benefit of imposing a "bright-line rule" that "has the advantage of providing clear guidance to law enforcement personnel." *Welch v. Iowa Dep't of Transp.*, 801 N.W.2d 590, 601 (Iowa 2011).

The cases on which the State relies do not compel a contrary conclusion. In *State v. Wallin*, the defendant was asked to consent to chemical testing, was provided with "the consequences of refusal" and "acceded to this request by signing the consent form presented to him." 195 N.W.2d at 98. This was "consent under the Implied Consent Law and nothing more." *Id.* This court then suppressed the evidence of the chemical blood test because the doctor withdrew a blood sample using a "syringe and needles not meeting statutory specifications." *Id.* In concluding that suppression was required, this court

cautioned against interpretations of the implied consent law that would render it "totally inoperative" or allow it to be "successfully circumvented." *Id. Wallin* is inapposite here.

In *State v. Ransom,* "an automobile driven by defendant collided with a bicycle, killing the cyclist." 309 N.W.2d 156, 157 (Iowa Ct. App. 1981). An officer asked the defendant if he would submit to a routine blood test. *Id.* He consented. *Id.* The defendant was not placed under arrest. *Id.* Instead, he was transported to a hospital where a blood sample was taken. *Id.* The district court suppressed the test result, but the court of appeals reversed. *Id.* at 159. The court of appeals explained that because the defendant was not under arrest at the time of the request or withdrawal of the specimen, the implied consent law was inapplicable. *Id.* At the time *Ransom* was decided, arrest was the only specified condition that triggered the implied consent procedures. *See* Iowa Code § 321B.3 (1975). With respect to that statutory provision, the *Ransom* court stated that when a peace officer places "a defendant under arrest" for OWI, the implied consent procedures "are mandatory." 309 N.W.2d at 158; *see also State v. Young*, 232 N.W.2d 535, 537 (Iowa 1975) ("It is apparent chapter 321B procedures relate almost exclusively to the post-arrest withdrawal and testing of body specimens."[1]). In contrast to *Ransom,* the statutory conditions requiring a written request for consent and the provision of advisories existed at the time Freund requested a chemical breath test. Flynn had taken a preliminary breath test indicating an alcohol concentration above the legal limit and he was under arrest for suspicion of violating section 321J.2.

---

[1]"Until 1986, the statutory implied consent law remained codified in chapter 321B of the Iowa Code separate and distinct from the criminal prohibition contained in section 321.281. In 1986, the legislature combined the implied consent law and the criminal prohibition into a new chapter of the Iowa Code, chapter 321J." *Laub*, 2 N.W.3d at 825.

Freund's failure to comply with the statute renders the chemical breath test result not competent for the purposes of prosecuting this OWI offense, and suppression of the chemical breath test is required. *See State v. Baraki*, 981 N.W.2d 693, 697 (Iowa 2022); *State v. Hraha*, 193 N.W.2d 484, 489 (Iowa 1972) (holding statute applied to criminal prosecutions as well as administrative proceedings to suspend driving privileges).

The State contends that the chemical test results should nonetheless be admissible because Flynn provided actual consent to chemical testing rather than mere implied consent and actual consent is an exception to the warrant requirement. The State's argument is unpersuasive for two reasons.

First, the State draws a false distinction between consent given pursuant to the implied consent statute and actual consent. "A person who operates a motor vehicle in this state . . . is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens . . . ." Iowa Code § 321J.6(1) (2022). "Although drivers are deemed to have impliedly consented to testing, they nonetheless generally have the statutory right to withdraw that consent and refuse to take any test." *State v. Overbay*, 810 N.W.2d 871, 876 (Iowa 2012).[2] Critically, under our statute, a motorist deemed to have given consent to test by operating a motor vehicle on Iowa's roadways has a statutory right to withdraw that consent or provide actual, informed consent to chemical testing. *See id.* ("Valid consent therefore must be given voluntarily with the decision to submit to a chemical test being 'freely

---

[2]This case and our discussion of the implied consent law herein is limited to requests for chemical testing of conscious motorists capable of providing consent or refusal who also have not been in a traffic accident resulting in death or personal injury reasonably likely to result in death. *Cf.* Iowa Code §§ 321J.7 (regarding "[a] person who is dead, unconscious, or otherwise in a condition rendering the person incapable of consent or refusal"), .10(1)(*a*) (regarding refusal during the course of an investigation of a "traffic accident [that] resulted in a death or personal injury reasonably likely to cause death").

made, uncoerced, reasoned, and informed.' " (quoting *State v. Garcia*, 756 N.W.2d 216, 220 (Iowa 2008))). As one court explained:

> [A] driver has two choices under the implied consent law. The first is to give actual consent . . . which is in accord with the "implied consent" the driver gave as a condition to operating a motor vehicle upon the public highways . . . . The other choice is to withdraw implied consent (refuse) and suffer the penalty specified in the implied consent law. A person choosing to give consent under the first option has given actual, voluntary consent. A driver who refuses to provide a sample has made a choice to *withdraw* his or her previously given consent. "This is plainly a choice designed to induce, but it is a choice nonetheless. And, as we have explained, offering this choice . . . makes all the difference."

*State v. Blackman*, 886 N.W.2d 94, 98 (Wis. Ct. App. 2016) (citations omitted) (quoting *State v. Padley*, 849 N.W.2d 867, 886 (Wis. Ct. App. 2014)), *rev'd on other grounds*, 898 N.W.2d 774 (Wis. 2017); *see also People v. Lopez*, 260 Cal. Rptr. 3d 18, 26–27 (Ct. App. 2020) (noting that California's implied consent law "is explicitly designed to allow the driver . . . to make the choice as to whether [to] give or decline to give *actual* consent to a blood draw when put to the choice." (quoting *People v. Balov*, 233 Cal. Rptr. 3d 235, 240 (Ct. App. 2018))).

Second, the State's contention that actual consent is a recognized exception to the federal and state constitutional preferences for searches conducted pursuant to warrants is true, but the contention is wholly immaterial here. The Federal and State Constitutions demarcate the outer bounds of lawful government action. But the legislature is free to draw a tighter circle and further limit a peace officer's conduct. And that is exactly what the implied consent statute does. When the statutory conditions exist, "chapter 321J is a comprehensive statutory scheme to implement the consent exception to the constitutional preference for search warrants . . . ." *Laub*, 2 N.W.3d at 830–31; *see also Young*, 232 N.W.2d at 537; *Frescoln*, 911 N.W.2d at 453 ("Consent to

chemical testing obtained under the implied consent statute falls under the voluntary consent exception to the warrant requirement.").

Washington has dealt with this exact issue under its implied consent law and has come to the same conclusion:

> The State argues, in part, that officers are not required to comply with the implied consent statute when a suspect voluntarily consents to a blood test. But as the court stated more than 20 years ago:
>
>> [C]onsent is no longer an issue in this state, since all drivers have consented *in advance* to testing for the presence of alcohol. The issue becomes one of deciding whether the officer complied with the statute in such a fashion as to adequately apprise the driver of his right to *withdraw* his consent.
>
> *State v. Krieg*, 7 Wash. App. 20, 23, 497 P.2d 621 (1972).
>
> The Washington Supreme Court has not squarely addressed whether a driver may give actual consent outside the strictures of the implied consent statute. But because the driver has already consented to a test by virtue of the implied consent statute, additional consent is irrelevant where the statute is triggered. *See Krieg*, 7 Wash. App. at 23, 497 P.2d 621. Further, an official request for consent without the warnings would deprive the driver of the opportunity to make an informed decision as to whether to revoke his or her consent. *See* [*State v. Whitman Cnty. Dist. Court*, 714 P.2d 1183, 1185 (Wash. 1986) (en banc)]. Considering these principles, we conclude that where the implied consent statute applies, the State cannot avoid complying with the statute by obtaining a driver's "voluntary" consent to a blood test.

*State v. Avery*, 13 P.3d 226, 230–31 (Wash. Ct. App. 2000) (first alteration in original); *see also Kandler v. City of Kent*, 397 P.3d 921, 925 (Wash. Ct. App. 2017). Other states have reached the same conclusion. *See State v. Smith*, 134 S.W.3d 35, 40 (Mo. Ct. App. 2003) ("The Missouri Implied Consent Law was enacted to codify the procedures under which a law enforcement officer could obtain bodily fluids for testing by consent without a search warrant."); *State v. Williams*, 246 A.3d 960, 965 (Vt. 2020) ("We recently explained that a defendant's

submission to a law enforcement officer's warrantless request for a breath test—where that request is made, like those challenged here, in accordance with the implied-consent law's requirements—satisfies the consent exception to Article 11's warrant requirement for two reasons.").

## III.

We hold that Freund invoked the implied consent statute when he requested Flynn, who had failed a preliminary breath test and was under arrest, consent to provide a breath specimen for chemical testing. The statutory implied consent procedure must be followed when the implied consent procedures are invoked. *See Laub*, 2 N.W.3d at 827. Freund failed to follow the implied consent procedures here. The failure to follow the required implied consent procedures when requesting a motorist to submit to a chemical breath test renders the test result not competent within the meaning of chapter 321J. The district court did not err in granting Flynn's motion to suppress evidence of the result of his chemical breath test.

**Affirmed and Case Remanded.**